FLETCHER v. CHAMBERLIN.

Strict foreclosure of a warranty mortgage of a tract of land perfects the warranted title by barring the mortgagor's right of redemption (G. L., c. 136, s. 14), and terminating the conditional character of the conveyance.  The deed, made absolute by foreclosure, continues between its parties to be a grant of the land on which it is foreclosed.

The foreclosure completes the mortgagor's sale of the warranted title in payment of the debt, and does not apply in payment, without the warrantee's consent, the warrantor's right to redeem the land from a prior mortgage.

The warrantee's title, after foreclosure as well as before, is protected by the covenants; and their power to estop the warrantor's denial of their truth, and prevent his taking the land from the warrantee on a prior mortgage or other outstanding title, does not depend upon the value of the land, or the warrantee's ignorance of its value when he foreclosed, or his ignorance of the falsity of the covenants when they were made.

WRIT OF ENTRY, brought April 28, 1877, by a devisee of Cephas C. Chamberlin, against John E. Chamberlin, for a tract of land in Lisbon.  Facts agreed.  February 17, 1855, the defendant and one Morse, being jointly seized of the demanded premises, conveyed the same, by their joint mortgage deed of that date, duly executed, and recorded July 19, 1855, to one Atkinson to secure notes payable by them to him.  By another mortgage deed, duly executed, dated May 3, 1855, acknowledged July 17, 1855,

and recorded after the registry of the prior mortgage, the defendant and Morse conveyed the premises to Cephas C. Chamberlin to secure a note payable by them to him. The second mortgage made no mention of the first, and contained full covenants of seizin, power, and authority to grant and convey against incumbrances and of warranty. Cephas foreclosed his mortgage against the mortgagors by writ of entry, a conditional judgment, and a year's possession of the premises under a writ of possession executed, as appears by the officer's return thereon, January 13, 1859,—the amount due on the mortgage being determined by the judgment to be $4,881.20.

At the October term, 1860, one Cameron, who had become owner of the first mortgage and the debt secured by it, brought a writ of entry against Cephas for the purpose of foreclosing the first mortgage. At the April term, 1861, Cameron obtained a conditional judgment. September 4, 1861, Cameron was put in possession by the execution of a writ of possession by which Cephas was evicted. The amount due on the first mortgage was determined by the judgment to be $2,592.40. August 26, 1862, before his foreclosure was completed, Cameron conveyed the premises to one Kenrick, and assigned to him the first mortgage and the debt secured by it, and Kenrick then took possession of the premises, and remained in possession, claiming them as his own until August 6, 1874, when he conveyed them to the defendant. The deed Cameron to Kenrick was recorded August 30, 1862; and the deed Kenrick to the defendant was recorded August 10, 1874. The plaintiff claims that Kenrick took the conveyance from Cameron at the request and for the benefit of the defendant, and held title to the premises for the benefit of and in trust for the defendant until he conveyed the same to him in 1874; and that when he took his deed from Cameron, and continuously thereafter until he conveyed to the defendant, he held property in his hands and possession belonging to the defendant of greater value than the amount he paid Cameron, all which the defendant denies, claiming that Kenrick held in his own right as the beneficial owner; but for the purposes of this case the facts in this respect shall be taken to be as claimed by the plaintiff. The defendant was in the actual possession of the premises from January 13, 1859, to September 4, 1861, as tenant of Cephas, and from that time to August 6, 1874, as tenant of Cameron and Kenrick respectively.

When Cephas recovered judgment, when his writ of possession was executed, and when he was evicted, the premises were worth as much as or more than the amount due on both mortgages. The defendant claims, and the plaintiff denies, that Cephas, when he took his mortgage, was fully informed of the Atkinson mortgage by the defendant, and that he declined to redeem the premises therefrom, although he knew when they were held by Cameron and Kenrick for the purpose of foreclosure that they were worth

as much as or more than the amount due on both mortgages; but for the purposes of this case the facts in this respect shall be taken to be as claimed by the defendant.

Cephas died in 1876, and the plaintiff is devisee of an undivided half of whatever interest Cephas had in the demanded premises at the time of his death.

There are three other real actions brought by devisees of Cephas, April 28, 1877, for the rest of the land. There is also an action of trover, brought by the administrator of Cephas, April 28, 1877, for timber cut on the premises in the lifetime of Cephas. There is also an action of covenant broken, brought by the administrator, April 30, 1877, on the covenants of the second mortgage. In each of the six actions the parties, reserving a jury trial at which no part of this agreed case should be evidence, desired the opinion of the court on the questions,—

1. Whether or not, upon the foregoing facts, Cephas, at the time of his decease, had any, and if any, what title in the demanded premises, and if any, what right of action for timber cut thereon; and if not any, then,—

2. Whether, at the time of his decease, he had any, and if any, what right of action upon the covenants in his mortgage deed.

*A. P. Carpenter*, for the plaintiff. I. The defendant, John E. Chamberlin, is estopped from setting up any title in the demanded premises, as against the plaintiff, by the covenants of warranty contained in his mortgage deed to Cephas. *Kimball* v. *Blaisdell*, 5 N. H. 533; *Wark* v. *Willard*, 13 N. H. 390; *Chamberlain* v. *Meeder*, 16 N. H. 381; *Morrison* v. *Underwood*, 20 N. H. 369; *Brown* v. *Manter*, 21 N. H. 529; *Thorndike* v. *Norris*, 24 N. H. 454; *Bell* v. *Twilight*, 26 N. H. 401; *Robertson* v. *Wilson*, 38 N. H. 48; *Kimball* v. *Schoff*, 40 N. H. 190; *Russ* v. *Perry*, 49 N. H. 547; *Somes* v. *Skinner*, 3 Pick. 52; *White* v. *Patten*, 24 Pick. 324; *Cole* v. *Raymond*, 9 Gray 217; *Carbrey* v. *Willis*, 7 Allen 364; *Sparhawk* v. *Bagg*, 16 Gray 583; *Pike* v. *Galvin*, 29 Me. 183; *Crocker* v. *Pierce*, 31 Me. 177; *Jarvis* v. *Deane*, 56 Me. 9; *McCusker* v. *McEvey*, 9 R. I. 528; *Douglass* v. *Scott*, 5 Ohio 195; *Philly* v. *Sanders*, 11 Ohio St. 490; *Gochenour* v. *Mowry*, 33 Ill. 331; *Hitchcock* v. *Fortier*, 65 Ill. 239; *Vanderheyden* v. *Crandall*, 2 Denio 9; *Mickles* v. *Townsend*, 18 N. Y. 575; *House* v. *McCormick*, 57 N. Y. 310; *Tefft* v. *Munson*, 57 N. Y. 97, and numerous other authorities *passim*. Those covenants have a double operation: 1. They operate by way of estoppel or conclusion, whether an interest subsequently accrued to the defendant or not, and bind parties and privies. 2. When the interest accrued to the defendant by his deed from Kenrick, they operated by immediately transferring that interest to Cephas. But if, because Cephas had then been evicted and was out of possession, their operation in this behalf was suspended, awaiting the election of Cephas or those claiming

under him to have that interest inure to their benefit (*Blanchard* v. *Ellis,* 1 Gray 195, Rawle Cov. (4th. ed.) 425, *n.* 2), then upon such election by the devisee of Cephas they operated to transfer that interest to the devisee ; and the bringing of this writ of entry amounts to such an election. *Doe d. Christmas* v. *Oliver,* 2 Smith L. C. 417 ; *Jarvis* v *Aikens,* 25 Vt. 635 ; *Nichol* v. *Alexander,* 28 Wis. 130 ; *Burton* v. *Reeds,* 20 Ind. 87 ; *Tucker* v. *Clarke,* 2 Sandf. Ch. 96.

II. The defendant is also estopped by his covenant against incumbrances to claim anything in the premises, inasmuch as Cephas acquired by his foreclosure, January 13, 1860, an absolute title to the premises as against everybody except Cameron, then the holder of the prior mortgage. The defendant will never be permitted to set up a title to the premises, under this prior mortgage, in the face of his covenant with Cephas that no such incumbrance existed. In legal effect, the mortgage was paid and the encumbrance discharged by the defendant, who was bound to discharge it,—1. By the deed of Cameron, August 26, 1862, to Kenrick, who took in trust for the benefit of the defendant. This conveyance, it may be noticed, operated merely as an assignment of the mortgage and mortgage debt, the foreclosure not being perfected until the 4th of September afterwards. 2. But if the mortgage was not discharged and cancelled by that transaction, it was by the conveyance of the premises by Kenrick to the defendant, August 6, 1874. Then, certainly, if not before, the defendant paid off and removed the encumbrance, as by his covenant against it he was bound to do. Suppose he had taken an assignment of the note and mortgage, May 4, 1855, the day after he made his covenant that the premises were free from all encumbrances, or suppose this mortgage had been held by Cameron all those years without foreclosure, and the defendant had taken an assignment of the note and mortgage August 6, 1874 : would anybody contend that he could under it set up a title to the premises as against this plaintiff any more in the one case than in the other? Can he stand any better in a court of justice, because, in addition to neglecting to pay the mortgage as long as Cameron was willing to carry it (for which there might be some feeble apology), he has also by grosser negligence of his duty allowed him to foreclose? We refer upon this point to the cases already cited, and to *Durham* v. *Alden,* 20 Me. 228, *Kellogg* v. *Wood,* 4 Paige 578, *Brundred* v. *Walker,* 12 N. J. Eq. 140, *Gibbs* v. *Thayer,* 6 Cush. 30, 34, *Bush* v. *Person,* 18 How. 82, and *Jones* v. *Kingsey,* 2 Jones Eq. 463.

III. The Littleton Lumber Co., who took a conveyance from the defendant of a part of the mortgaged land, August 27, 1874, are privies in estate, and equally bound by the estoppel. See the cases before cited, and *Bank of Utica* v. *Mersereau,* 3 Barb. Ch. 528, 568 ; *Fairbanks* v. *Williamson,* 7 Greenl. 96 ; *Stow* v. *Wyse,* 7 Conn. 214 ; *French* v. *Spencer,* 21 How. 228 ; *Bush* v. *Person,* 18 How. 82 ; *Dudley* v. *Cadwell,* 19 Conn. 218, 226 ; *Jarvis* v. *Aiken,*

25 Vt. 635; *Trevivan* v. *Lawrence*, 1 Salk. 276; *Lincoln* v. *Emerson*, 108 Mass. 87; *Knight* v. *Thayer*, 125 Mass. 25; *Irvine* v. *Irvine*, 9 Wall. 617; *Vreeland* v. *Blauvelt*, 23 N. J. Eq. 483; *Van Rensselaer* v. *Kearney*, 11 How. 297; *Doe* v. *Dowdall*, 3 Houston (Del.) 369; *Shotwell* v. *Harrison,*, 22 Mich. 410.

IV. The action on the covenants was brought after the other suits. We do not suppose it can be maintained. We claim to own the land; but if the court should hold that we do not, it seems tolerably clear that we are entitled to damages of the defendant for the breach of his covenants.

*Bingham & Mitchell*, for the defendant. The second mortgage was discharged and cancelled by operation of law, January 13, 1860. Since that day it has had no legal existence as a claim against the mortgagors or on the mortgaged property. The character of the title to the mortgaged premises then changed. Instead of being a mortgagee, as he had been to that date, Cephas then became absolute owner of the interest mortgaged. In contemplation of law he surrendered his claim *in personam*, in consideration of having his claim *in rem* perfected and absolute. When the defendant and Morse deeded to Cephas, May 3, 1855, they owned in the land conveyed only the equity of redemption from the Atkinson mortgage. This was a valuable interest, worth more than the debt it secured. When Cephas took this conveyance he had notice and knowledge of the Atkinson mortgage. Having knowledge of its existence, a record of it, or a notice of it in the deed, was unnecessary. *Rogers* v. *Jones*, 8 N. H. 264; *Brown* v. *Manter*, 22 N. H. 468. In the foreclosure of his mortgage, which was perfected January 13, 1860, one year from the day on which he took possession under his writ of possession, he got perfect and absolute title to the mortgagor's right of redemption from the Atkinson mortgage. As some authorities state it, it was a purchase of that right. He gave for this right the debt which it had before secured. He made a good bargain, because the right was worth as much as or more than there was due on his mortgage. When he thus got absolute title to this right, the discharge and extinguishment of the mortgage debt became absolute by operation of the same law that gave him an absolute title. He no longer had a mortgage debt against his mortgagors, but did have their right to redeem the land from Atkinson's mortgage. The mortgagors no longer had their equity of redemption; but for the loss of it the law gave them the extinguishment of the debt.

" The object of such entry is to procure payment by foreclosure, unless payment should be otherwise made, and the land discharged; and whenever the title to the land is perfected by this process, the debt is extinguished so far as there is actual value received." *Hunt* v. *Stiles*, 10 N. H. 466, 469. " By this foreclosure, the debt became extinguished, to the extent of the value of the land at the

moment of foreclosure." *Smith* v. *Packard*, 19 N. H. 575, 578. "By virtue of the foreclosure, he has already applied the land, to the extent of its value at the time of foreclosure, in payment in whole or in part of the notes. The conveyance as a mortgage is *functus officio*, and has become absolute." *Cross* v. *Gannett*, 39 N. H. 140–142. "In case the mortgagee forecloses and retains title to the land on which he has foreclosed, the land is applied in payment of the debt." *Green* v. *Cross*, 45 N. H. 574, 576. "A mortgagee having obtained a decree of foreclosure, and appropriated the mortgaged estate to himself, divested of any equity of redemption, must be considered as a purchaser of the estate, in satisfaction of his debt, if the value exceeds the amount ascertained to be due by the decree; or, if the value does not amount to that sum, in satisfaction of so much of his debt as the mortgaged estate was worth in cash at the time the right of redemption given by the decree expired." *Lovell* v. *Leland*, 3 Vt. 582. Recognizing and affirming this doctrine are *Thomas* v. *Warner*, 15 Vt. 113; *Paris* v. *Hulett*, 26 Vt. 308. To the same point are *Coit* v. *Fitch*, Kirby 255; *M'Ewen* v. *Welles*, 1 Root 202; 2 Swift's System 440; *Derby Bank* v. *Landon*, 3 Conn. 62; *Swift* v. *Edson*, 5 Conn. 535; *Bassett* v. *Mason*, 18 Conn. 136; *Marston* v. *Marston*, 45 Me. 416; *Haynes* v. *Wellington*, 25 Me. 458; *Amory* v. *Fairbanks*, 3 Mass. 562; *Hedge* v. *Holmes*, 10 Pick. 380; *Palmer* v. *Fowley*, 5 Gray 545; *Morse* v. *Merritt*, 110 Mass. 460; *Spencer* v. *Executors of Harford*, 4 Wend. 382; *Hatch* v. *White*, 2 Gall. 152; *Poweshiek County* v. *Dennison*, 36 Iowa 244 (14 Am. Rep. 521, 524), and cases there cited; 2 Wash. R. P. 140; 2 Greenl. Ev., s. 524; 4 Kent Com. 182; 2 Jones Mort., ss. 952, 953, 1251, 1264, 1285.

The right to redeem is a subject of foreclosure. 2 Wash. R. P. 41. By his foreclosure Cephas took the right to redeem the land from the prior mortgage in payment of the second mortgage debt. The value of the right thus received in payment being equal to the amount of the debt, the debt was extinguished, and the mortgage by which it had been secured was no longer in force against the defendant. Cephas's loss of what he had received in payment by his failure to redeem the land from the prior mortgage cannot be thrown upon the defendant. There is no estoppel against the defendant's after acquired title under the prior mortgage.

*J. W. Rowell* (of Vermont), for the plaintiff. September 4, 1861, Cameron, the holder of the Atkinson mortgage, was put in possession, and Cephas was evicted. August 26, 1862, Cameron conveyed the land to Kenrick, and assigned to him the Atkinson debt and mortgage. Kenrick took the conveyance and assignment at the defendant's request and for his benefit, and held the same in trust for him until he conveyed to him August 6, 1874. The Atkinson mortgage has not been foreclosed. Kenrick stood as a

mere assignee of it (*Cooper* v. *Cole*, 38 Vt. 185); and when he conveyed to the defendant, if not before, that mortgage was satisfied and extinguished, and the defendant took no title by the conveyance from Kenrick.

The defendant's covenants in the second mortgage bound him to remove the prior mortgage. *Bingham* v. *Weiderwax*, 1 Comst. 509, 513. Cephas had a right to rely on those covenants. The defendant's allowing the first mortgage to have effect against the second would be a breach of his covenants in the second, for which he would be liable; and those covenants would estop him from setting up against Cephas any title acquired under the first mortgage. *Butler* v. *Seward*, 10 Allen 466. If Cephas's title was defeated by a title paramount, against which the defendant had covenanted to defend, so that Cephas received no benefit from his mortgage, its foreclosure did not operate as payment, and its efficacy was not thereby impaired as between him and the defendant. *Whitney* v. *Willard*, 13 Gray 203.

*A. P. Carpenter*, for the plaintiff. The covenants contained in a mortgage deed are not extinguished by a foreclosure of the mortgage, but remain in full force as muniments of the title, whether the estate acquired by the foreclosure be of greater or less value than the amount of the mortgage debt. *Lockwood* v. *Sturdevant*, 6 Conn. 373; *Carbrey* v. *Willis*, 7 Allen 364; *White* v. *Whitney*, 3 Met. 87; *Butler* v. *Seward*, 10 Allen 466; *Lloyd* v. *Quimby*, 5 Ohio St. 264; *Smith* v. *Cannell*, 32 Me. 125; *Philly* v. *Sanders*, 11 Ohio St. 490; *Thorndike* v. *Norris*, 24 N. H. 454. One fallacy of the defendant's argument lies in assuming that a satisfaction of the mortgage debt by a foreclosure has the same effect upon the mortgage deed and the covenants therein contained as a payment of the mortgage debt in money, although in the former case the deed becomes absolute, and the mortgagee a purchaser (99 Mass. 4), and in the latter case it becomes void.

A, owning land worth $5,000, mortgages it to B for $3,000, and then conveys it for its full value, $5,000, with warranty to C, who immediately mortgages with warranty to D for $2,000 of the purchase-money. D forecloses against C, and is then evicted by B. According to the defendant's logic, D has no remedy against either A or C; and A, notwithstanding his covenants to C, is liable to nobody, and gets off scot free, with $3,000 clear gain in his pocket; for (1) C has no claim upon A, because he has parted with all his interest in the land, and can maintain no action upon A's covenant until he has himself been compelled to pay damages upon his covenant to D. *Chase* v. *Weston*, 12 N. H. 413, and cases cited; Rawle Cov. 341, *et seq.* (2) But D has no claim against C, because his mortgage debt has been fully paid by the foreclosure. (3) For the same reason he has no claim against A. He is entitled to the benefit of A's covenant, as well as C's, for the protection only of

his interest as mortgagee, and when his mortgage debt is paid he plainly has no further claim against anybody. Of course it follows (as the defendant claims) that in case B's mortgage should come by purchase or otherwise to the possession of either A or C, D would thereby be in no wise benefited: the mortgage would be good against him in the hands of either. The only possible way in which D can save any part of his $2,000 is by redeeming B's mortgage, and thus becoming a purchaser of the property at its full value; and in any event A clears and is permitted to hold, in the teeth of his covenant, $3,000. Why should not D be permitted to pay B's mortgage, and recover the amount directly of A, who manifestly ought to pay it, or to recover it of C, who may then recover of A? It may be said, to be sure, that C is the loser in any event, but if he chooses to sell the property to D for $2,000, is that any of A's business? Is that any reason why A (or even C, for that matter) should not be required to keep his covenant?

*Bingham, Mitchell & Batchellor*, for the defendant. After Cephas perfected his foreclosure, it was his and not the defendant's duty to pay the Atkinson debt, because when Cephas, by foreclosure, purchased the equity of redemption, he thereby, in law, assumed the payment of that debt. Had he paid it, he would have simply discharged his own legal obligation. His rights, duties, and liabilities, on becoming owner of the equity, were just what they would have been had he got it by deed executed by the mortgagors. It would then be his duty to pay the first mortgage debt, or lose his property. The conveyance by foreclosure having the same effect that a conveyance of the equity by deed would have, Cephas was bound to pay the Atkinson debt, and is therefore estopped from taking any advantage of the failure to pay it. *Watts* v. *Welman*, 2 N. H. 458. When Cephas had transferred to him the right to redeem the land from the Atkinson mortgage, the effect of that operation was to carry with it the duty of doing it, or suffer the land, his own property, to be taken in satisfaction of it. The plaintiff's doctrine of estoppel is right before the transfer, but wrong after it. It is applicable to the facts and relations existing before foreclosure, but inapplicable to those existing after it. *Emerson* v. *Lincoln*, 108 Mass. 87, is applicable before foreclosure, but not afterwards. We particularly desire an examination of our position, that when Cephas got perfect title to the equity of redemption, he thereby became, in law, as between himself and John E. Chamberlin, bound to discharge the lien upon the land which was created by the first mortgage. He got the right, and with it went the duty.

CLARK, J. Foreclosure is the process by which a mortgagee himself acquires or transfers to a purchaser an absolute title to

the property, of which he has previously had a mere lien or incumbrance. By this process the mortgage title, which was before conditional, becomes absolute. The mortgagor's right of redemption is extinguished, and the mortgagee's title is perfected. By foreclosure the mortgage debt is paid and extinguished by an absolute transfer of the estate,—in full, if the estate is of sufficient value, or *pro tanto*, if the value is insufficient. But, although the debt is paid and extinguished, and the relation of debtor and creditor, mortgagor and mortgagee, no longer exists, the mortgage title is not destroyed. Thenceforth the mortgagee holds the estate by an absolute title, protected by the covenants of the mortgage, which still remain in force. The mortgage title is not extinguished by the foreclosure, but made absolute. *Bellows*, C. J., *Stantons* v. *Thompson*, 49 N. H. 272, 279. "If the mortgage is foreclosed, then the estate, which was conditional and defeasible in its creation, becomes absolute; and the incidents, privileges, and covenants attached to it, unchanged by anything which the mortgagor or any other person may have done in the mean time, remain attached to it as if the original conveyance had been absolute." *Shaw*, C. J., *Ritger* v. *Parker*, 8 Cush. 145, 149. The mortgagee's title, when perfected by foreclosure, relates back to the date of the mortgage deed, so as to avoid intervening incumbrances, in like manner as an execution levied on land has relation back to the original attachment. *Goodwin* v. *Richardson*, 11 Mass. 470, 475.

By the foreclosure of his mortgage Cephas C. Chamberlin acquired an absolute title to the demanded premises as against the mortgagors, Chamberlin and Morse. Their right of redemption was extinguished as to him, and his defeasible title became perfect as against them. His mortgage, by foreclosure, became an absolute title, which they had covenanted to warrant and defend against all incumbrances. His subsequent eviction by the paramount title of Cameron, as the assignee of the Atkinson mortgage, was a breach of their covenants; and when John E. Chamberlin afterwards acquired the title to the demanded premises, by force of those covenants his title immediately enured to Cephas by estoppel. The defendant is estopped to deny the title of the plaintiff to the demanded premises, under the mortgage executed by John E. Chamberlin, with covenants of warranty. *Thorndike* v. *Norris*, 24 N. H. 454, 461; *Kimball* v. *Schoff*, 40 N. H. 190; *Foss* v. *Strachn*, 42 N. H. 40; *Knight* v. *Thayer*, 125 Mass. 25; *Butler* v. *Seward*, 10 Allen 466; *Lincoln* v. *Emerson*, 108 Mass. 87; *Jarvis* v. *Deane*, 56 Me. 9.

It is argued that the legal effect of Cephas C. Chamberlin's foreclosure was to vest in him absolutely the right to redeem the land from the Atkinson mortgage; that he became the absolute owner of this right by his own acts, and by operation of law; that the legal result following the acquisition of this right was, that he surrendered for it, and the law cancelled, the debt, and extinguished

the mortgage with all its covenants, for all purposes. This argument is based upon the erroneous assumption that Cephas C. Chamberlin, by the process of foreclosure, instead of obtaining an absolute title to the mortgaged estate against the mortgagors, by operation of law surrendered his debt and ̇extinguished his mortgage for the absolute right of redeeming the estate from a prior mortgage which the mortgagors had covenanted did not exist; that he extinguished his mortgage title instead of perfecting it, and subjected himself to the burden and duty of removing an incumbrance from the estate against which the mortgagors had covenanted to warrant and defend his title. The proposition advanced is, that the mortgagors, by the process of foreclosure, were relieved of both the mortgage debt and the mortgage covenants,—of the debt because it was paid by the land, and of the covenants because they were extinguished by the payment of the debt; and that notwithstanding the land was subsequently taken from the mortgagee by a paramount title, he is without remedy because he failed to remove an incumbrance against which the mortgagors covenanted to protect him. The statement of this proposition shows its unsoundness. *Baldwin* v. *Norton*, 2 Conn. 161.

The fallacy of the argument is twofold, in assuming, first, that Cephas C. Chamberlin's mortgage was of an equity of redemption merely; and secondly, that a second mortgage by foreclosure acquires additional rights against a prior mortgagee, or any right against the mortgagor other than the extinguishment of the mortgagor's right to redeem the second mortgage. As against the holder of the Atkinson mortgage, the mortgage of Cephas was of the equity of redemption only; but as against the mortgagors who had conveyed to him the land with full covenants of warranty, it was a mortgage of the fee. The fact that Cephas knew of the existence of the Atkinson mortgage did not change the character of the estate conveyed to him, or release the mortgagors from their covenants. Jones Mort., s. 735; *Estabrook* v. *Smith*, 6 Gray 572. When, therefore, the mortgagor's right of redemption was extinguished by foreclosure, the title of Cephas became absolute, not to the equity of redemption from the Atkinson mortgage merely, but to the land as against the mortgagors; and they are estopped by the covenants in their deed from alleging the existence of the Atkinson mortgage for any purpose. Nor did Cephas by the foreclosure of his mortgage acquire any additional rights from the mortgagors, or against the holder of the prior mortgage. The foreclosure merely extinguished the right of the mortgagors to redeem his mortgage by the payment of the debt secured by it. It gave him no additional rights, and imposed no additional duties upon him. His right, as subsequent mortgagee, to redeem the Atkinson mortgage, existed the same before as after the foreclosure; and the right of the mortgagors to redeem the land from the Atkinson mortgage by the payment of their debt, and the duty of

performing their covenants to him by removing the incumbrance of the prior mortgage, still remained.

The fact that the mortgaged premises were worth as much or more than the sum due upon both mortgages at the time of the foreclosure, did not relieve the mortgagors from their covenants in the second mortgage. Whether the equity of redemption from the Atkinson mortgage exceeded in value the amount due upon the second mortgage is immaterial, because the foreclosure of the second mortgage, as against the mortgagors, was upon the land, and not upon the equity of redemption. If the land was of greater value than the second mortgage debt, the mortgagors could redeem. If they chose not to redeem, they were bound by their covenants to defend the title of the second mortgagee, when that title became absolute by the process of foreclosure.

Cephas C. Chamberlin was not bound to redeem the land from the Atkinson mortgage. He had the right to rely upon his covenants. He had neither assumed, nor had the law imposed on him, the obligation of the payment of the Atkinson mortgage debt; and if the mortgagors did not see fit to redeem the land at the price of both mortgage debts, they have no legal cause of complaint because he did not choose to do it. *Elder* v. *True*, 32 Me. 104.

*Case discharged.*

Smith and Carpenter, JJ., did not sit: the others concurred.

The defendant moved for a rehearing.

*H. Bingham*, for the defendant. The plaintiff stands upon the rights of Cephas C. Chamberlin, deceased, who had the promissory note of the defendant and one Robert Morse, secured by a mortgage of the premises with the usual covenants of warranty made by the defendant and Morse, and accepted by Cephas with the full knowledge on his part that the premises were subject to a previous mortgage to one Atkinson. On the 13th day of January, 1859, Cephas entered upon the premises under legal process to foreclose his mortgage, turned the defendant and Morse out of possession, and remained in possession for more than one year. At the time of the foreclosure of his mortgage by Cephas, the equity of redemption from the Atkinson mortgage was worth as much as or more than his mortgage debt, or the land itself was worth as much as or more than the sum of the debts secured by both mortgages. Cephas, well knowing all these facts, neglected to redeem the land from the Atkinson mortgage, and suffered the holder of that mortgage to turn him out of possession September 4, 1861, by entry under legal process upon that mortgage, and to foreclose the same by holding possession of the premises thereunder for more than

one year. The title thus acquired under the Atkinson mortgage was conveyed to the defendant August 6, 1874. Cephas having thus abandoned his rights in the premises, and having made in his lifetime no attempt to regain them, died in the spring of 1876. April 28, 1877, the plaintiff commenced this action which is now under consideration, it being the first movement in the direction of asserting any right to the premises on the part of Cephas or his representatives since the abandonment thereof, in manner aforesaid, on the 4th day of September, 1861.

During the past discussion of the cause, we have taken certain positions, some of which were not denied by the other side, but all of which now seem to be more or less irreconcilable with the conclusion of the court. Among those positions are the following: According to the law of New Hampshire, a mortgage is a mere incident of the debt, is simply security for the debt, and when the debt is paid the mortgage has performed its mission; the mortgagee shall get no advantage out of his mortgage after he has received his principal and interest; the foreclosure of a mortgage is the taking of the property mortgaged in payment of the debt secured by the mortgage so far as value is received, and the debt is paid whenever the property foreclosed upon equals or exceeds in value the debt secured by the mortgage; the foreclosure of a second mortgage is the foreclosure of an equity of redemption, is a foreclosure of the right to redeem the first mortgage, is the application of the equity of redemption in payment of the second mortgage debt, so far as value is received; the value of the equity of redemption in such a case is the value of the land after the amount of the first mortgage debt is taken therefrom; the second mortgagee, when he forecloses his mortgage, is required to account upon his own debt for the excess of the value of the land over and above the amount of the first mortgage debt, and to hold the mortgaged premises as the primary fund for the payment of the first mortgage debt; the second mortgagee, when he enters for the purpose of procuring payment upon the equity of redemption and forecloses with a full knowledge of the situation, by that act unmistakably accepts the situation, and binds himself by that acceptance to take and hold by his foreclosure in accordance with the situation, to apply the surplus value of the premises above the first mortgage debt in payment of his own mortgage debt, and to hold the premises charged with the payment of the first mortgage debt; the second mortgagee, after foreclosing his mortgage and realizing value in the equity of redemption, equal to or in excess of his own mortgage debt as between himself and the mortgagor, ought to pay the first mortgage debt, and therefore cannot, by taking an assignment from the first mortgagee of his debt and mortgage, compel the mortgagor to pay that debt; in case the mortgagor were compelled to pay the first mortgage debt after such foreclosure and realization of value by the second mortgagee, he

would in equity be subrogated to the rights of the first mortgagee, and would have a right to an assignment of such first mortgage and the debt secured by it to enable him to reimburse himself out of the fund in the hands of the second mortgagee; the second mortgagee, after foreclosing his mortgage and realizing out of the equity of redemption payment of his debt, cannot change his relations with the mortgagor without the mortgagor's consent, and without restoration of what he has received, by abandoning the mortgaged premises to the first mortgagee and suffering him to obtain an indefeasible title by foreclosure; in case of such foreclosure, such realization of payment and such abandonment by the second mortgagee and such foreclosure by the first mortgagee, the relations of the mortgagor with the second mortgagee are not changed by such abandonment by the second mortgagee and foreclosure by the first mortgagee. The debt of the second mortgagee, being paid-by his foreclosure of the equity of redemption, remains paid, while the second mortgagee having foreclosed his mortgage and taken from the mortgagor sufficient funds to pay his own mortgage debt and the debt of the first mortgagee, and by refusing to pay the first mortgage debt, having suffered the whole thing, the fund that paid him and the fund with which he ought to have paid the first mortgage debt, to go in payment of the first mortgage debt, is left with no claim upon the mortgagor or anybody else, and with nobody to blame except himself.

These positions in reference to the case in hand rest upon obvious principles of justice and equity, and are fully sustained by the authorities. After the foreclosure of his mortgage by Cephas, the mortgagors could not maintain a bill to redeem the Atkinson mortgage because their right to redeem that mortgage had been foreclosed. *Colwell* v. *Warner*, 36 Conn. 224. By the foreclosure of his mortgage, Cephas became the absolute owner of the right to redeem the Atkinson mortgage, and came to the possession of funds that paid his own mortgage debt and were also sufficient to pay the Atkinson mortgage debt. After such foreclosure, Cephas held the mortgaged premises as a primary fund for the payment of the Atkinson mortgage debt. *Vanderkemp* v. *Shelton*, 11 Paige 28; *McKinstry* v. *Curtis*, 10 Paige 503; *Marsh* v. *Pike*, 1 Sandf. Ch. 210; *Blyer* v. *Monholland*, 2 Sandf. Ch. 478.

It is said that the mortgagors had the right to pay their notes which were the debt secured by the Atkinson mortgage, and might have done so after the foreclosure of his mortgage by Cephas. The mortgagors were still liable to Atkinson on their notes, but I deny that they ought to pay those notes after Cephas had taken from them funds amply sufficient to pay both mortgage debts, and forever barred them from the recovery thereof. If Atkinson had compelled the mortgagors to pay the note secured by his mortgage after Cephas had foreclosed, they would in equity have been subrogated to the rights of Atkinson, and could have compelled

Cephas, as the holder of the primary fund for the payment of the Atkinson mortgage, to reimburse them. *Vanderkemp* v. *Shelton*, *supra; McKinstry* v. *Curtis, supra; Heyer* v. *Pruyn,* 7 Paige 465; *Tice* v. *Annin*, 2 Johns. Ch. 125; *Russell* v. *Allen*, 10 Paige 249; *Mathews* v. *Aiken*, 1 N. Y. 595.

It seems to be argued that Cephas, by reason of the covenants in his mortgage, had some advantages beyond the payment of his mortgage debt, and that for the same reason, when he foreclosed his mortgage, he was not subject to the ordinary rules of law and equity which control second mortgagees. Suppose, after foreclosing his mortgage and before his eviction, Cephas had brought an action on his covenants against the mortgagors : what could he have recovered ? Certainly nothing but nominal damages until he paid the Atkinson mortgage debt, and if he paid that we have already seen that he would be paying it out of funds in his own hands received from the mortgagors, and which it was his duty to appropriate in payment of the Atkinson mortgage debt. Cephas, when he foreclosed his mortgage, got what was worth as much or more than the debt secured by his mortgage, together with full indemnity against the Atkinson mortgage, together with funds in his own hands sufficient to pay that debt, and which funds it was his duty to appropriate on that debt. In the name of all that is reasonable, why was not the mortgage debt of Cephas paid by his foreclosure ? On the authorities already cited, why was not his debt paid ? Why was not his debt paid, according to authorities of which the New Hampshire reports are full ? *Green* v. *Cross*, 45 N. H. 574; *Hunt* v. *Stiles*, 10 N. H. 466; *Smith* v. *Packard*, 19 N. H. 575. Why should he recover even nominal damages on the covenants of his mortgage, when if he pays the incumbrance, on account of the supposed existence of which the nominal damages are given, he can recover nothing therefor ? By his foreclosure he took and accepted sufficient funds belonging to the mortgagors to pay his own mortgage debt and the Atkinson mortgage debt, and must be held by that act to have received and accepted the same in satisfaction of any breach of the covenants to him growing out of the existence of the Atkinson mortgage.

Cephas acted under no misapprehension. He knew when he took his mortgage all about the Atkinson mortgage. He knew when he took his mortgage that it was in fact a mortgage of an equity of redemption,—that he was second mortgagee. He knew when he entered and foreclosed that he was second mortgagee, and he must be held by his foreclosure, under those circumstances, to have understandingly assumed, and to have intended to assume, all the responsibilities, liabilities, and advantages incident to a foreclosure by a second mortgagee. There cannot be any principle of law, equity, or reason that would permit him, after he had completely barred the mortgagors out of the mortgaged premises, to do any act, or refrain from doing any act, without the consent of

the mortgagors, and without restoring to the mortgagors what he had taken from them, which should make such appropriation of the mortgaged premises by him any more or less a payment of his mortgage debt.

By foreclosing his mortgage, and doing as the case finds he did do, he was paid his mortgage debt, just the same as he would have been if he had redeemed the Atkinson mortgage. He took the mortgaged premises charged with the duty of paying the Atkinson mortgage debt, in payment of his own debt, and allowed the whole mortgaged premises to go to pay the Atkinson debt. He thereby paid the Atkinson mortgage debt, and relieved the mortgagors from any liability to Atkinson on their note to him, as he ought to do. The fact that he saw fit, in addition to paying Atkinson his debt, to let him have also what had been paid him, Cephas, in satisfaction of his, the second, mortgage debt, affected nobody but Atkinson and Cephas. Atkinson got big pay, and Cephas paid him the big pay. The mortgagors got no advantage because Cephas overpaid the Atkinson mortgage. It was a simple act of recklessness on the part of Cephas in dealing with his own property. He probably said the property was his own, and he would do as he pleased with it.

Suppose Cephas, after Atkinson had foreclosed upon him, and obtained the mortgaged premises by an indefeasible title, had brought an action against the mortgagors on the covenants of his mortgage. We have seen that after his foreclosure and before his eviction he could not maintain any action upon his covenants against the mortgagors. We have seen that his eviction, under the circumstances under which it took place, did not and could not affect his relations with the mortgagors, and consequently he could no more maintain an action on the covenants in his mortgage after eviction than before.

The authorities cited by the court, and the law applied by the court to this case, are properly applicable to deeds of absolute conveyance, and to deeds of mortgage when it has become necessary for the mortgagee to assert his rights as the owner of the legal estate for the security of his debt, but are not properly applicable to the facts and circumstances agreed upon in this case. There is no doubt about the position that if a man makes an absolute conveyance with covenants of warranty, any title which he subsequently acquires will enure to the benefit of the grantee;—and so of a mortgage with covenants of warranty: any title subsequently acquired by the grantor will enure to the benefit of the mortgagee as fully as if he had the absolute legal estate so far as it is necessary to protect and secure his debt, and until payment of the debt by foreclosure or otherwise, and after foreclosure and payment, so far as the particular interest which is foreclosed upon and constitutes the payment is concerned. If a mortgagee forecloses on the entire mortgaged premises, he makes the whole his own if the

mortgagor does not redeem, however much in value the premises may exceed the amount of the debt. If the mortgagor from any cause forecloses on a part only of the mortgaged premises, and the value of what he forecloses upon equals or exceeds his debt, then his debt is paid, and the remainder of the mortgaged premises is discharged from the mortgage. The covenants, also, in the mortgage, so far as they relate to such remainder, are discharged. The mortgagor may hold such remainder, without interference, under any title he may have, whether acquired before or after such foreclosure of part of the mortgaged premises. No doctrine of estoppel would apply to such remainder. *Green* v. *Cross,* 45 N. H. 574; *Goodel* v. *Bennett,* 22 Wis. 565; *Burpee* v. *Parker,* 24 Vt. 567. The law is distinctly settled in New Hampshire that the mortgagee may make a valid foreclosure on a part only of the mortgaged premises, and if he does make such partial foreclosure, and the part foreclosed upon equals or exceeds the debt in value, then the debt is paid, and the remainder of the mortgaged premises is discharged from the mortgage. The doctrine is well settled that the mortgagee, when he has got his principal and interest, shall not have further advantage out of the mortgage. *Green* v. *Cross, supra.*

When mortgaged property is foreclosed upon, any covenants, express or implied, on the part of the mortgagor, touching the specific property foreclosed upon, and which is applied by the law in payment of the debt, still remain muniments to protect the mortgagee in the enjoyment of the estate, but unless there is some defect of title to what is foreclosed upon and constitutes the payment when the mortgage debt is paid by foreclosure, there cannot be any valid cause of action upon the mortgage covenants after foreclosure. The controversy in this case is not about what the general principles of the law are, but in regard to what particular principles of the law ought to be applied to the peculiar facts and circumstances agreed upon in this case.

One mode of testing the correctness of an application of legal principles to a given case is the character of the result at which you arrive,—whether it is reasonable, or unreasonable; whether it is equitable, or inequitable. The reasoning of the court certainly leads to the conclusion that Cephas, after foreclosing and getting absolutely the right to redeem the Atkinson mortgage, and after having his mortgage debt thereby fully paid, did not stand as second mortgagee, did not hold the mortgaged premises as a primary fund for the payment of the first mortgage debt, but as against the mortgagors he held the land itself free and clear of the Atkinson mortgage, and that notwithstanding his mortgage debt was already fully paid, with ample funds besides in his own hands, taken by him from the mortgagors, sufficient to pay the first mortgage debt, he still had the right, by virtue of the covenants in his mortgage, the debt secured by which was fully paid, to pursue the mortgagors and compel them to pay the first mortgage debt, while

he keeps for his own use and behoof forever not only the funds which fully paid his own mortgage debt, but also the funds with which he ought to have paid the Atkinson mortgage debt.

In speaking of the effect of the foreclosure of the mortgage of Cephas, the court say,—"Therefore the mortgagors' right of redemption was extinguished by foreclosure, and the title of Cephas became absolute, not to the equity of redemption merely, but to the land as against the mortgagors, and they are estopped by the covenants in their deed from alleging the existence of the Atkinson mortgage for any purpose." It is clear the court assume that under the circumstances of the agreed case the mortgagors, after the foreclosure, and after the payment of the debt of Cephas, were still bound by their covenants to Cephas to pay the Atkinson mortgage. Otherwise there could not be any such estoppel. Further on the court say, speaking of the rights and duties of the mortgagors after the foreclosure of their entire interest in the premises,—"And the right of the mortgagors to redeem the land from the Atkinson mortgage by the payment of their debt, and the duty of performing their covenants to Cephas by removing the incumbrance of the prior mortgage, still remained." It is plain that the court apply the law to the agreed facts precisely as if the conveyance from Morse and the defendant had been an absolute conveyance with full covenants of warranty, instead of a conveyance in mortgage as a mere security for a debt, or as if the mortgagee was enforcing his rights as owner of the legal estate for the security of his debt, instead of being engaged, as the representative of the mortgagee in this proceeding is engaged, in pushing to get some advantage out of the mortgage after the mortgage debt has been paid. Either this application of the law of New Hampshire to this case is a just one, or it is not. It is either all right, or all wrong. The first obvious result of such an application of the law is to permit Cephas, after he has foreclosed his mortgage and obtained thereby payment in full of his mortgage debt, to push on and to get a further advantage out of his mortgage, and by virtue of the covenants in his mortgage to compel the mortgagors, after they had fully paid his mortgage debt, to pay him an additional sum equal to the amount of the Atkinson mortgage debt. Such a result on the face of it shows a wrong application of the law. *Green* v. *Cross*, 45 N. H. 574, and other authorities before cited. Applying the law as the court does to the situation after the foreclosure of Cephas, the results, in every aspect of them, show, as it seems to me, that such an application of the law is not warranted by either reason or authority.

If it was the fact that Cephas, after his foreclosure, was the absolute owner of the mortgaged premises as against the mortgagors, with the right to require them to pay the first mortgage debt with funds outside of the mortgaged premises, then it would follow,—

1. That Cephas, after foreclosing the second mortgage and get-

ting funds sufficient by such foreclosure to pay his own mortgage debt and also the first mortgage debt, could pay the first mortgage debt with the funds thus taken from the mortgagors, and then sue the mortgagors on their covenants in his mortgage, and get from them the second time funds sufficient to pay the Atkinson mortgage debt, together with reasonable damages for his trouble, services, counsel fees, and other incidental expenses and costs. This result plainly demonstrates that the application of the law made by the court requires the mortgagors to pay Cephas the Atkinson mortgage debt twice, while Cephas pays it to Atkinson only once.

2. It would follow that Cephas, having foreclosed and got his own debt paid, together with sufficient funds to pay the Atkinson mortgage debt, might refuse to pay the Atkinson mortgage debt and suffer himself to be evicted and the Atkinson mortgage to be foreclosed, and then sue the mortgagors on his covenants and recover, I suppose, the value of the land itself; recover a sum equal to the sum of both mortgage debts, together with incidental damages, costs, etc. This result compels the mortgagors to pay Cephas his mortgage debt twice and the Atkinson mortgage debt twice, while Cephas only pays Atkinson his mortgage debt once.

3. Cephas might keep the funds taken by his foreclosure with which he ought to redeem the Atkinson mortgage, and might suffer an eviction and foreclosure by Atkinson, and then lie in wait, and if by chance Morse and the defendant, either one or both, ever became owner or owners of the premises, then take the whole thing by way of estoppel. This result compels the mortgagors to pay both mortgage debts twice to Cephas, and is as plainly inequitable as the other results.

On the other hand, let the foregoing results be contrasted with the results of the application to the facts in this case of the law for which we contend.

1. Cephas forecloses his mortgage, gets his own mortgage debt paid, and in addition to that gets funds taken from the mortgagors sufficient to pay the Atkinson mortgage debt. With the funds so taken he pays that debt. Then both mortgage debts are paid: the mortgagors have fully paid them out of their own property. The mortgages have fulfilled their mission, and brought about the payment of the debts they were made to secure.

2. Suppose Cephas, after paying the Atkinson mortgage debt, sues the mortgagors on their covenants. The mortgagors show the foreclosure of Cephas, the payment of his mortgage debt, the funds he took from them with which he ought to pay the Atkinson mortgage debt. The court hold that Cephas, having been paid his mortgage debt, and having had funds taken from the mortgagors sufficient to pay the Atkinson mortgage debt, in paying that debt did just what he was equitably bound to do; that the debt secured by his mortgage being paid, the covenants in his mortgage thereby

were neutralized and defeated, and that therefore Cephas cannot recover in his suit.   *Hatch* v. *Kimball*, 14 Me. 9.

3. Suppose Cephas, after foreclosing and getting his pay, with funds in addition thereto sufficient to pay the Atkinson mortgage debt, keeps those funds, which are the primary funds for the payment of that debt, and refuses to pay the Atkinson mortgage debt, and thus suffers an eviction and a foreclosure of the Atkinson mortgage: nothing can be any plainer than that this eviction of Cephas is caused by his own wrong; that he himself was the owner of the property lost, and being the one in fault was properly the loser too.   Any attempt to visit the loss of the wrong-doing of Cephas upon anybody but himself is plainly inequitable and grossly unjust.

I suppose the court, in saying that the mortgagors, after the foreclosure of the second mortgage by Cephas, still had the right to redeem the first mortgage and that it was their duty to do so, did not mean that they had the right to redeem that mortgage and to obtain thereby the benefits ordinarily resulting to the redeeming party, but they meant that the mortgagors had the right and that it was their duty to pay the Atkinson mortgage debt in order to enable Cephas to keep not only the funds that he had taken in payment of his own mortgage debt, but also the additional funds which he had taken from the mortgagors with which he ought to pay the Atkinson mortgage debt.   A second mortgage is a mortgage of the mortgagor's right to redeem the first mortgage, and when the second mortgage is foreclosed the mortgagor is forever barred from redeeming or having in any way what was conveyed by the mortgage; hence it is very plain that after the foreclosure of the second mortgage the mortgagor can have no right left to redeem the first mortgage.   That right is the very right which the second mortgagee by his foreclosure has made absolutely his own.  In *Colwell* v. *Warner*, 36 Conn. 224, the court say,— "Now when the second mortgagee forecloses the mortgagor, the whole equity of redemption vests in him precisely as the whole estate vests in the first mortgagee after foreclosure, and he alone is entitled to redeem the first mortgage."   But it is not probably worth while to cite authority to prove a point so easily demonstrated.

I quote still further from the opinion of the court in this case: "Nor did Cephas, by the foreclosure of his mortgage, acquire any additional rights from the mortgagors or against the holders of the prior mortgage.   The foreclosure merely extinguished the right of the mortgagors to redeem their mortgage by the payment of the debt secured by it.   It gave no additional rights and imposed no additional duties upon him."   It seems to us that the foregoing is a very imperfect and inaccurate statement of the change produced in the relative positions of first and second mortgagee and mortgagor by the foreclosure of the second mortgage.

In *Hunt* v. *Stiles*, 10 N. H. 466, the court say,—"It is well settled that the foreclosure of a mortgage operates as payment of the debt to the value of the mortgaged premises. The object of such entry is to procure payment by foreclosure unless payment should be otherwise made and the land discharged, and whenever the title is perfected by this process the debt is extinguished so far as value is received."

Now let us see how the parties in this case stood in reference to each other before and after the foreclosure of the second mortgage, beginning with Cephas. By foreclosing his mortgage his debt was extinguished, and the property foreclosed upon became his absolutely. Before he foreclosed he had a debt, with a lien on real estate to secure its payment; after foreclosure he had no debt, but had become a real estate owner. He had acquired the mortgaged premises absolutely, subject to the Atkinson mortgage, with the sole right to redeem that mortgage. He had by his foreclosure put it out of the power of the first mortgagee to get the whole premises by treaty with the mortgagors and paying the second mortgage debt. So that if the mortgaged premises were worth more than both mortgage debts, the position of the second mortgagee after foreclosing his mortgage was more advantageous than that of the first mortgagee, for he could redeem the first mortgage, and hold the whole property, and the first mortgagee could not redeem the second mortgage. Then, again, according to the law, as the court have applied it in this case, the second mortgagee, Cephas, got by his foreclosure the land itself, absolutely unincumbered, as against the mortgagors, with the right to compel the mortgagors to pay the Atkinson mortgage debt,—that is, he got land worth as much as his mortgage debt added to the Atkinson mortgage debt, simply in discharge of his own mortgage debt. So that Cephas, according to our view of the law, was equitably paid his mortgage debt. According to the view of the court, he was not only paid his debt by his foreclosure, but acquired the right to compel the mortgagors to pay him a sum in addition equal in amount to the Atkinson mortgage debt.

As it respects the first mortgagee, he lost by the foreclosure of the second mortgage all chance of ever obtaining the land on his mortgage, unless, indeed, the second mortgagee, who commanded the situation, and alone had the right to redeem the first mortgage, recklessly should throw away the estate which he had acquired by the discharge of his debt.

As it regards the mortgagors themselves, according to our views as to what a proper application of the law to the case in hand is, they were forever barred by the foreclosure of the second mortgagee from the mortgaged premises, but their debts were paid to the extent of the value of the land that had been taken from them. They had no right to redeem the first mortgage because that right had been taken from them, and was held by the second mortgagee.

They might purchase and take an assignment of the first mortgage the same as any outside person, and reimburse themselves therefor, as against Cephas, out of the mortgaged premises, because Cephas by his foreclosure got surplus funds enough, over and above enough to pay the first mortgage debt, to pay his mortgage debt. Why should not the mortgagors in such a case be reimbursed out of the mortgaged premises? What equity is there in permitting the second mortgagee to retain land enough or more than enough to pay both mortgages on account of one mortgage? Where can another case be found in which a mortgagee, after his mortgage debt has been paid, has been permitted by virtue of the doctrine of estoppel to push on and get a further advantage out of his mortgage? I call attention here to this doctrine of estoppel as expounded by *Redfield*, J., in *Blake* v. *Tucker*, 12 Vt. 44: "Fraudulent and dishonest intentions it is the object of the law and the duty of the courts to defeat, so far as practicable. And the whole doctrine of the law of estoppel is based upon this principle to effect justice and prevent wrong. Wherever the arbitrary application of the general doctrine of estoppel would be likely to defeat this very salutary object, the cases show that it has been considered the duty of courts to prevent the application. So that at the present time, I apprehend, should that application be allowed to bring about manifest injustice, as in many cases it would if not qualified or restrained by the discretion of the courts, it would be thought that the doctrine of estoppel was a very dangerous weapon in unskilful hands. So that the skill of the judge in regard to this subject consists not so much in the discovery of the true principle, as in the wisdom of its application to particular cases." *Redfield*, J., cites several cases as illustrating these views, and among them *Hatch* v. *Kimball*, 14 Me. 9. It is a well settled rule that estoppels are never raised between parties when it would be unconscionable and inequitable to do so.

Again: As respects the mortgagors, according to the views of the court, as expressed in their opinion, the rights of property of the mortgagors, as shown by the case to have existed, were absolutely sacrificed by the foreclosure of the second mortgage. They were by that foreclosure not only forever barred from any interest in the mortgaged premises, but the whole mortgaged premises were applied in payment of the second mortgage debt, and the burden left upon their shoulders of paying the first mortgage debt for the benefit of the second mortgagee—practically, to all intents and purposes an absolute gift to the second mortgagee. Truly, may not this be an instance of the unskilful application of the doctrine of estoppel deprecated by *Redfield*, J.?

The court further say,—"The fact that the mortgaged premises were worth as much or more than the sum due on both mortgages at the time of the foreclosure, did not relieve the mortgagors from their covenants in the second mortgage. Whether the equity of

redemption from the Atkinson mortgage exceeded in value the amount due upon the second mortgage is immaterial, because the foreclosure of the second mortgage was upon the land, and not upon the equity of redemption. If the land was of greater value than the second mortgage debt, the mortgagors could redeem. If they chose not to redeem, they were bound by their covenants to defend the title of the second mortgagee." The statements in the last quotation that the fact of the mortgaged premises being "worth as much or more than the sum due on both mortgages at the time of the foreclosure of the second mortgage did not relieve the mortgagors from their covenants in the second mortgage," and that it was immaterial whether the equity of redemption from the Atkinson mortgage exceeded the amount due upon the second mortgage or not, sound very strangely in my ears, although they are conclusions that follow directly enough from the positions of the court already considered. These statements sound as strangely in my ears as it would if when a suit were brought in this court upon a promissory note, and the defence were payment, I should hear the court charge the jury in these words: "The fact that this note has been paid once is immaterial; here it is, produced in court, and it must be paid again."

But I have not made the last quotation particularly on account of these statements. My special object in making it is because the court state in it more briefly than elsewhere the argument upon which, as I understand it, their opinion is based. The court say, in substance, that the fact that the equity of redemption was worth more than the debt is immaterial, because the foreclosure was upon the land, and not upon the equity of redemption. The language of this statement implies, and so I take it the court means to be understood, that if the foreclosure had been of the equity of redemption only, then the fact that the equity of redemption was worth more than the debt would be material, and the debt be paid by the equity of redemption only. Then there would be no estoppel or liability on the covenants on account of the Atkinson mortgage. It would seem, then, that in the view of the court the decision of this cause turns on the question what it was upon which the second mortgage was foreclosed. If the foreclosure was upon the equity of redemption only, then, the debt being thereby paid, there could not be a further proceeding by an action on the covenants to get additional advantages out of the mortgage. But the court hold in this case that the second mortgagee did not take and hold the land by foreclosure, subject to the first mortgage; that by his foreclosure he took the land divested of the first mortgage, although at that very same time the first mortgage was a subsisting valid lien on the land. To be sure, the court qualify their position by saying that the foreclosure of the second mortgage was upon the land divested of the first mortgage, as against the mortgagors; but according to the facts stated in the case, there was nobody

that the second mortgagee had any occasion to foreclose except the mortgagors. It was only necessary for the second mortgagee to foreclose the mortgagors in order to make the ownership absolute in him of all that he got by his mortgage. A foreclosure of the second mortgage in this case against the mortgagors was a foreclosure against all the world, and was a foreclosure against all the world because it was a foreclosure against the mortgagors.

Was the foreclosure of the second mortgage in this case a foreclosure upon and a taking of the equity of redemption only, or was it a foreclosure upon the land itself divested of the first mortgage? If the foreclosure of the second mortgage in this case was technically upon the land divested of the first mortgage, was it so in fact, and does it make any difference as to the conclusions that ought to be arrived at in this case?

This foreclosure was under the statute of New Hampshire by process of law. The statute as it stood at the date of the foreclosure may be found in the Compiled Statutes, *c.* 137, *s.* 14, and is as follows: "The right of the mortgagor to redeem any mortgaged premises shall be forever barred and foreclosed by the mortgagee in the following modes: First, by entry into the mortgaged premises under process of law, and continued actual possession thereof for one year." The statute requires that the mortgagee, in order to foreclose against the mortgagor, should hold continued actual possession of what is foreclosed upon for one year. The statute requires actual possession on the part of the mortgagee. Does the mortgagee hold actual possession as against the mortgagor, or anybody, of what is not in his possession at all, and is not in the possession of the mortgagor, and which neither the mortgagee nor the mortgagor have a right to hold as against the person who does hold it, which person is not a party to the proceeding, and if he was he couldn't be affected or controlled by either the mortgagee or the mortgagor? It is beyond the power of the human senses to comprehend how a man can hold actual continued possession of what a third person has the sole, the absolute, the actual, and the exclusive control and possession. There could not be an actual possession of one man against another, when neither of them had any possession of any kind, or the right to any possession as against the man who has the actual possession. The second mortgagee, on a process against the mortgagors, could not enter upon and hold actual possession of what belonged to a third party. The case of *Green* v. *Cross*, 45 N. H. 584, illustrates this. In that case the mortgagee entered under process of law against the mortgagor, and got actual possession of only a part of the mortgaged premises because the balance of the premises was in the actual possession of a third party. It was held, as to the part of the mortgaged premises of which continued actual possession was maintained for a year by the mortgagee, that there was a foreclosure, and, as to the balance, that there was no foreclosure. Cephas, when he took his mort-

gage, got nothing but the equity of redemption. His mortgagors had nothing to mortgage but an equity of redemption, and he knew it, as the case finds. When he entered to foreclose, he took possession of just what he got by his mortgage, which he knew was subject to the prior mortgage. When he took his mortgage, the prior mortgage was on the land ahead of him; when he entered on the mortgaged premises, the prior mortgage was on the land ahead of his mortgage, and he knew it. It was not in his power to get actual possession of the mortgaged premises in any other way except subject to the Atkinson mortgage. The mortgagors could not give him any possession but possession subject to the Atkinson mortgage. Cephas knew that the Atkinson mortgage was prior to his own, and he must be presumed to have intended to enter upon and to appropriate on his debt just what there was that he could enter upon and appropriate in that way, and it cannot be presumed that he intended to enter upon and appropriate to the payment of his debt what he knew belonged to another, and what he knew he could not so enter upon and so appropriate. *Hunt* v. *Stiles*, 10 N. H. 466.

The idea that a second mortgagee can enter under his mortgage and foreclose as against anybody upon a greater estate than he has a mortgage of, is certainly a novel one. His mortgage is of an equity of redemption only, and his foreclosure of that mortgage must be limited, as to what he thereby takes, to what he has a mortgage of. *Colwell* v. *Warner*, 36 Conn. 224; *Goodman* v. *White*, 26 Conn. 317. Nobody would suspect, on reading the details of the foreclosure of Cephas in the case, that anybody would claim such foreclosure to have been upon anything more than an equity of redemption. The assumption that the second mortgagee, with a mortgage of the equity of redemption only, did by virtue of that mortgage take and hold continued actual possession of the land divested of the prior mortgage for one year, and by so doing did foreclose and take the land divested of the prior mortgage as against anybody, is an unnatural, unreasonable, and impossible assumption. The entry to foreclose a mortgage must be presumed to be upon such estate, embraced in the mortgage, as the mortgagor owned and could convey in mortgage, with the intent to appropriate it in payment of the debt, not to be upon the estate of third persons with the intent to appropriate their estate in payment of the debt of the mortgagor. *Hunt* v. *Stiles*, 10 N. H. 468, 469.

If the foreclosure of the second mortgage was technically upon the land divested of the first mortgage, was it so in fact, and does it make any difference as to the conclusions that ought to be arrived at in this case? It is clear that the idea that Cephas had the actual possession of the land divested of the prior mortgage is a mere fiction. It is certainly not a fact. Why should the law raise or imply in this case a fiction so forced and unnatural?

What is sought to be accomplished by adopting it? Everybody understands that a second mortgage, whether with or without covenants of warranty, is not anything more or less than a mortgage of the right to redeem from the first mortgage. Nobody entering to foreclose a second mortgage would ever think he was going to foreclose anything but that mortgage, or get anything by such foreclosure except what that mortgage was a mortgage of. The object of introducing this fiction, and the effect of introducing and applying it to the facts in this case, are questions to be considered. The decision seems to admit that the rights of the parties in this suit are different, if the foreclosure of the second mortgage is regarded as a foreclosure on the land divested of the first mortgage, from what those rights would be if that foreclosure were regarded as a foreclosure of the equity of redemption only. Now, how can there be any difference as to the rights of the parties in this suit, whether one theory or the other be adopted? Of course I expect that the answer to this question would be, that if the second mortgagee did make a valid foreclosure upon the land itself, divested of the first mortgage as against the mortgagors, then the second mortgagee, by virtue of such foreclosure and the covenants in his mortgage, would have the right to compel the mortgagors to pay the first mortgage debt,—that is, that the second mortgagee, after having foreclosed on the land itself and got thereby funds enough belonging to the mortgagors to pay his own mortgage debt and also to pay the first mortgage debt, had the right to keep not only the funds that paid his own mortgage debt, but also the funds with which he ought to pay the first mortgage debt, and to compel the mortgagors to pay the first mortgage debt the second time for his benefit. If this effect follows as a legal consequence from the theory that the foreclosure of the second mortgage is a foreclosure upon the land itself and not upon the equity of redemption, then it is most manifest that this little fiction works out a result heavily loaded with wrong and injustice. The law nowhere tolerates fictions of this character. Chancery sometimes assumes things to be done which have not been done, but such assumptions are made to carry out the proper intentions and agreements of the parties interested, not to do injustice.

It remains to be considered whether or not this theory, if it be accepted, has the effect which is claimed for it. I contend that no such legal consequences follow from it. If Cephas is held theoretically to have foreclosed on the land divested of the first mortgage as against the mortgagors, it is certain he got nothing as an actual possession unto himself but an equity of redemption. The first mortgage was under him. That mortgage is fastened to what he gets, and cannot be shaken off except by exercising the right he acquired absolutely by his foreclosure, the right of redemption. But Cephas does get by his foreclosure, not theoretically, but actually, into his positive ownership and control the equity of redemp-

tion, and thereby receives value equal to his debt, and his debt is paid. If he gets any more out of his mortgage he must do it by a new proceeding. an action on his covenants, or the application of the doctrine of estoppel. If the mortgagee, after his debt has been paid, pursues the mortgagor further and gets more, we have the spectacle of the mortgagee getting an advantage out of his mortgage after his principal and interest have been paid, a thing which the law says shall not be. *Gordon* v. *Lewis*, 2 Sumn. 155, cited in *Green* v. *Cross*, 45 N. H. 586. This case is not affected by any mere theory as to whether the foreclosure of the second mortgagee was upon the land itself as against the mortgagors, or upon the equity of redemption only.

It is suggested that our position as to the effect of the foreclosure of the second mortgagee is erroneous and unreasonable, because it compels the second mortgagee to redeem the first mortgage, against which the mortgagors had covenanted to protect him. The answer to this suggestion is plain. The covenants were a part of the mortgage, and together they constituted the mortgage, which was merely a security for the debt, and had no existence for any other purpose. When the debt was paid, the security had performed its work. The mortgagee was entitled to no further advantage out of the mortgage. When the mortgagee forecloses on property subject to a mortgage previous to his own mortgage, or to taxes or charges of any kind, he takes that property with the object of obtaining payment of his debt at what it is worth, with the mortgage, taxes, or whatever charges may be upon it, and the law applies it at that valuation on the debt. A debt paid by an equity of redemption at its value is paid. A debt paid by land unincumbered at its value is not any more than paid. A piece of land worth $4,000, subject to a mortgage of $2,000, pays a debt just as thoroughly as a piece of unincumbered land worth $2,000 pays a debt of $2,000. As it respects getting a debt paid, if you get value equal to your debt, you are paid. As to whether or not a two thousand dollar farm, unincumbered, would be preferable to a four thousand dollar farm, incumbered to the extent of two thousand dollars, would depend on the kind of a farm wanted by the particular individual making the choice. But so far as the law is concerned, one must go just as far as the other, when applied in payment of a debt. Cephas, when he decided to foreclose his mortgage, decided that he wanted and would take the mortgaged premises just as they were, and just as he knew they were, subject to the Atkinson mortgage, in payment of his mortgage debt, if not redeemed, so far as thereby he should receive actual value; and he did foreclose on the mortgaged premises, subject to the Atkinson mortgage, and did take the mortgaged premises subject to the Atkinson mortgage, and the actual value received by him equalled his mortgage debt. As the law of New Hampshire stands in her reports to-day his debt was paid. *Hunt* v. *Stiles*, 10 N. H. 466;

*Green* v. *Cross*, 45 N. H. 586; *Smith* v. *Packard*, 19 N. H. 575. The payment of the mortgage debt neutralizes and defeats the covenants of the mortgage, and heals all the breaches of those covenants. *Hatch* v. *Kimball*, 14 Me. 9.

Among the authorities cited by the court in their opinion, there is no case where the covenants in a mortgage are held to be in force, and produce estoppels under the circumstances in which an estoppel is claimed in this case. Among those authorities, there is no case where the covenants in a mortgage are held to be in force and to produce estoppels after the mortgage has been paid by foreclosure on the mortgaged premises, by value thus received outside of and over and above the incumbrance, which constitutes the only breach of those covenants, and when, too, the mortgagee is fully indemnified by funds in his own hands, taken from the mortgagors, against any claim that can be made upon the mortgaged premises by virtue of that incumbrance.

I cannot refrain from recurring once more to some expressions already quoted from the opinion of the court, inasmuch as those expressions state in a few words what seems to me to be the startling injustice which forms the groundwork of that opinion: "The fact that the mortgaged premises were worth as much or more than the sum due upon both mortgages at the time of the foreclosure did not relieve the mortgagors from their covenants in the second mortgage. Whether the equity of redemption from the Atkinson mortgage exceeded in value the amount due on the second mortgage is immaterial." Let us try to analyze the foregoing, and see, if we can, what it means, bearing in mind that maxim of law, justice, and equity, that the foreclosure of a mortgage is payment of the mortgage debt by the mortgagor to the mortgagee, so far as value is received, and then the expressions of the court last quoted, in effect, will read thus: The fact that the second mortgagee has been paid his mortgage debt in full by the mortgagors is immaterial. Under the circumstances of this case, the second mortgagee, although paid in full his mortgage debt, is entitled to a still further payment thereon from the mortgagors. The fact that the second mortgagee has received from the mortgagors funds amply sufficient to pay the only incumbrance that can possibly be a breach of the covenants in his mortgage, does not relieve the mortgagors at all from liability to him on those covenants, but he may still pursue the mortgagors on those covenants, and compel them to pay the first mortgage debt, while he puts in his own pocket, for his own use forever, the funds with which he ought to have paid the first mortgage debt. Such is the meaning, as I interpret it, of the quotation from the opinion of the court last above made; and it seems to me, as the law is, and as this case is, the interpretation I have given is the true meaning.

Suppose A takes a second mortgage of a piece of land, with full covenants of warranty, to secure a debt. Suppose B takes a second

mortgage of another piece of land, and it is stated in the deed to be subject to the first mortgage, and with covenants in full, excepting the first mortgage, to secure a similar debt. Now both A and B have second mortgages, one with full covenants of warranty, the other with covenants qualified in respect to the first mortgage. Each mortgage is for a similar purpose, viz., to secure a debt. Both mortgage deeds actually convey the same estate, viz., an equity of redemption only, although one mortgage deed purports to convey the whole estate, and the other conveys the estate subject to the first mortgage. Both A and B have the legal estate granted them so far as the same was in their respective mortgagors, and may enforce the same so far as it is necessary to secure their respective debts, and no further. Up to this point they stand alike. In what respect, viewed in every aspect, do their respective rights differ? If their respective mortgagors each pays up his first mortgage, then both A and B may foreclose their mortgages upon the land itself. No difference, then, in this particular. Again: Suppose any time before foreclosure either mortgagor desires to redeem: he may do so by paying his debt; either mortgagor may do it upon those terms, and no less. Again: Suppose the first mortgages in both cases remain unpaid, and A and B both foreclose upon their respective equities of redemption, and the value of those equities of redemption in each case is less than the debt: what can A and B do about their respective debts so far as they remain unpaid? B can sue for and recover of his mortgagor the unpaid balance of his debt, but he cannot do it by suing his covenants, because there has been no breach of his covenants. A can sue, and recover the unpaid balance of his debt; and he may do it by suing directly on his debt for the balance unpaid, or by an action on the covenants in his mortgage: but whichever remedy he adopts he can only recover the unpaid balance of his debt. So that in this contingency A and B practically stand alike,—both being dependent upon the personal pecuniary responsibility of their respective mortgagors for any unpaid balance of their debts after the foreclosure of their respective mortgages.

Again: Suppose both the first mortgages remain unpaid, and A and B both foreclose on their respective equities of redemption, and receive thereby respectively value equal to their several debts. Their respective debts exist no longer. The mortgages that were made for the sole purpose of securing those debts have done their work, and stand just alike. The debt secured by the mortgage being paid, then, according to the inexorable law of New Hampshire, the mortgagee shall have no further advantage out of his mortgage. Certainly B cannot successfully harass his mortgagor any more, for if he sues on his debt his mortgagor will show it paid. Certainly A has got all he is entitled to, and can get no more. If he sues on his debt, his mortgagor will show it paid. If he sues on his covenants, the mortgagor will show that the cove-

nants sued are neutralized and defeated because they are covenants in a mortgage made to secure a debt which has been paid.

The court close their opinion as follows: " Cephas C. Chamberlin was not bound to redeem the land from the Atkinson mortgage. He had the right to rely upon his covenants. He had neither assumed, nor had the law imposed on him, the obligation of the payment of the Atkinson mortgage debt, and if the mortgagors did not see fit to redeem the land at the price of both mortgaged debts, they have no legal cause of complaint because he did not choose to do it." The foregoing seems to assume our position to be that Cephas, after his foreclosure, was bound by an obligation to the mortgagors to redeem the Atkinson mortgage. Whereas our position is and has been, that Cephas, having foreclosed upon and taken from 'the mortgagors their right to redeem the Atkinson mortgage, and having thereby been paid his mortgage debt; or, in other words, Cephas, having foreclosed upon and taken the mortgaged premises charged as a primary fund with the payment of the Atkinson mortgage debt, and being paid his mortgage debt by such foreclosure, had the sole right to redeem the Atkinson mortgage, and was alone interested to have the Atkinson mortgage debt paid; and that it was an obligation which he was under to himself to pay the Atkinson mortgage debt if he wanted to keep the property he had acquired by foreclosure and paid for by the cancellation of his mortgage debt; and that Cephas, after he had accepted from the mortgagors payment of his mortgage debt, with full indemnity against the Atkinson mortgage debt, the only claim that ever could in any way disturb the property which he had taken in payment of his mortgage debt could not change the legal relations between himself and the mortgagors in respect to this business, without their consent, by any act he might do or neglect to do.

The statement that Cephas, after his foreclosure, had a right to rely on his covenants, overrides directly, but does not answer, our position that the foreclosure gave him value equal to his mortgage debt, and over and above the only incumbrance which ever was or ever could be a breach of the covenants in his mortgage, and by absolute payment of the mortgage debt neutralized and defeated those covenants.

As it regards the statement that Cephas, by his foreclosure, had neither assumed, nor had the law imposed on him, the obligation of the payment of the Atkinson mortgage debt, our reply is, that by foreclosing his mortgage upon the equity of redemption, he made it his own property, and obtained payment of his mortgage debt. He then owned the equity of redemption. He then owned the mortgaged premises charged as a primary fund with the payment of the Atkinson mortgage debt. He was the only man that had any interest to have this charge of the Atkinson mortgage debt taken off from the mortgaged premises. He was the only man

that had the right to redeem the mortgaged premises from the Atkinson mortgage. Of course, after his foreclosure, he could refuse to redeem the Atkinson mortgage, the same as he could refuse to eat his breakfast. But if he refused to redeem the Atkinson mortgage, he could not blame anybody except himself if he lost his property; and if he refused to·eat his breakfast, he could not blame anybody except himself if he went hungry all the forenoon. It is only in this way that we have claimed that Cephas did assume by his foreclosure, and the law did impose upon him, the obligation of the payment of the Atkinson mortgage debt.

As it regards the further statement that if the mortgagors did not see fit to redeem the land at the price of both mortgage debts they have no legal cause of complaint because Cephas did not choose to redeem the Atkinson mortgage, we say that after the second mortgage was foreclosed, the mortgagors had no right to redeem either mortgage. Their mortgage debts were extinguished by the extinguishment of all their rights in the mortgaged premises. The debt of the second mortgagee being paid, whatever he did in regard to the redemption of the first mortgage, the mortgagors, of course, would have no legal cause of complaint so far as any interest they had was concerned, because Cephas chose to allow the whole mortgaged premises to go in payment of the Atkinson mortgage debt. That was an affair which concerned the interests of the second mortgagee only. This present unjust proceeding on the part of the representatives of Cephas is the real grievance in this matter, so far as the mortgagors are concerned.

A somewhat extended recent examination of the authorities has confirmed my first impressions as to what the rule of law is that ought to be applied to the facts in this case. I am firmly convinced that there does not exist any such rigid, unbending rule of law, overriding equity and the discretion of courts, as gives the mortgagee, after he has been paid his principal and his interest, the right to continue his pursuit of the mortgagor on his mortgage, and to get out of him still further advantages. I further submit that the application of the law for which I contend produces results in accordance with the general ideas of right and wrong entertained by all fair-minded men in regard to the mutual obligations of debtor and creditor, mortgagor and mortgagee, to each other; while the reverse is true in respect to those theories which I have been endeavoring to combat.

Doe, C. J. Of the six cases reserved on the same agreed facts, the only one necessary to be considered is the writ of entry *Fletcher v. John E. Chamberlin:* and as the defendant does not contend that the law of the case is affected by the fact that Morse was joined with him as a grantor in the mortgages, the defendant may be regarded as sole grantor and sole warrantor. Having first mortgaged the land to Atkinson, he gave a warranty mortgage of

the same land to Cephas (the plaintiff's devisor), and assisted in foreclosing this second mortgage by a year's possession under process of law, the defendant holding the possession as tenant of Cephas, the foreclosing mortgagee.  It is not claimed that there was any extension of the time of redemption, or any irregularity in the foreclosure, or that there is any cause for opening the foreclosure and letting the defendant in to redeem.  His claim is, that he has no right of redemption; that by the foreclosure, barring his right of redemption, the second mortgage was paid; and that he afterwards got the land by transactions that took the foreclosed property from Cephas without consideration, passed it to the defendant, and left the mortgage paid by the title thus transferred from the mortgagor to the mortgagee, and back to the mortgagor.

Cameron, having become the owner of the first mortgage and the debt secured by it, was the defendant's creditor for the amount of that debt.  After Cephas had completed the foreclosure of the second mortgage, Cameron entered under process of law for the foreclosure of the first, and the defendant attorned to him.  But Cameron did not foreclose.  Before he had held possession a year, the defendant paid him what he owed him, and Cameron withdrew, leaving the land in the defendant's possession.  The case does not expressly state that the defendant paid Cameron no more than he owed him; but as he had warranted the land to Cephas against the prior mortgage which he had a right as mortgagor to extinguish by paying his own debt to Cameron, and as he could gain no advantage by paying more than Cameron could require him to pay, there is no presumption of law or fact that he paid more.

The defendant's employment of Kenrick as an agent to pay the first mortgage debt, and Cameron's assignment of the mortgage and debt to that agent, are as immaterial as the conveyance of the land to the same agent by Cameron, who had no other title than the unforeclosed mortgage.  Cameron's assignment to the mortgagor's agent was no more than an assignment to the mortgagor. For some purposes, a mortgagor's right of redeeming land is a mere right to annul the conditional land-grant by performing its condition, and to leave the title where it would be if the grant had not been made.  G. L., c. 136, ss. 4–13.  For some purposes, it is the mortgagor's estate subject to the mortgage.  G. L., c. 238; *White* v. *Whitney*, 3 Met. 81, 86.  In many cases, the law regards the mortgage as assigned to the person who performs the condition, even if the mortgage is formally discharged; and in many cases, it is discharged in law, notwithstanding a formal assignment of it to him.  *Robinson* v. *Leavitt*, 7 N. H. 73, 101; *Bailey* v. *Willard*, 8 N. H. 429; *Fellows* v. *Dow*, 58 N. H. 21; *Holt* v. *Baker*, 58 N. H. 276; *Woodbury* v. *Swan*, 58 N. H. 380; *Rolfe* v. *Wooster*, 58 N. H. 526; *P. S. Bank* v. *Weeks*, 59 N. H. 239; *Bacon* v. *Goodnow*, 59 N. H. 415; *Hammond* v. *Barker*, 61 N. H. 53.  If the junior mortgage had contained, instead of full covenants of warranty, a

stipulation binding Cephas to pay the prior mortgage, or otherwise limiting the grant and covenants to the equity of redemption (*Lawrence* v. *Towle*, 59 N. H. 28, 30), the grantor's payment of the prior mortgage, whether accompanied by a written assignment or a written discharge, or by neither, might operate as an assignment or a discharge, according to the requirements of justice under various circumstances: and against the defendant's mortgage-conveyance of the land to Cephas with full covenants of warranty, under the circumstances of this case, it was immaterial whether the defendant took from Cameron a written assignment or a written release to himself or his agent.

The mortgagor, being left in possession, went through a form of completing the foreclosure of the first mortgage by professing to attorn to his own agent, and holding possession as tenant of himself. Of the part taken by the defendant as the principal in this affair, it does not appear that Cephas had any knowledge; and notice cannot be inferred from the agreed facts, or from the defendant's apparent purpose. If his covenants in the second mortgage were a defence against his foreclosing the first, he did not avoid that defence by concealing his attempt to avoid it. Could he take the land on the prior incumbrance against which he had warranted the land that was worth enough to pay both of the mortgages he had put upon it? The question in one of its forms is, whether Cephas, with his mortgage debt of about $5,000 paid by his foreclosure perfecting his title of the land in 1860, lost the whole amount of that debt in 1862 by his warrantor's seizure of the perfected title, while the warrantor, without estoppel, and without any liability for the debt he had contracted and the covenants he had broken, gained the same amount by resuming the title his warranty bound him to defend. In another form, the question is, whether Cephas gained, and the mortgagor lost, about $2,500 by the foreclosure of the second mortgage and the mortgagor's payment of the first.

In determining whether Cephas, by his foreclosure of the second mortgage and the defendant's payment of the first, got the land (worth as much as the amount of both debts) in payment of the debt due to him from the mortgagor, or whether the mortgagor got the land in payment of the debt he owed Cameron, one material inquiry is, Between Cephas and the mortgagor, what property was received by Cephas in payment of his note? If, between them, his mortgage was a conditional conveyance, not of the land, but of the right of redeeming the land from the prior mortgage, or if, between them, being a conveyance of the land, it was foreclosed on nothing but the equity of redemption, or, being foreclosed on the land, ceased to be a conveyance of the land, and became, between them, a conveyance of the equity only, Cephas, accepting the equity in foreclosing payment of his note, would take it at its value, which was equal to the amount of his note. If his warranty

mortgage between its parties was a conditional conveyance of the land in 1855 when it was made, and if, between them, it continued to be a warranty conveyance of the land in 1860 when it became unconditional by foreclosure, the equity was not accepted in foreclosing payment. The plaintiff contends that between those parties the warranty mortgage and its foreclosure were a sale of the land: the defence is, that between those parties the warranty mortgage and its foreclosure were a sale of nothing but the equity.

As it does not appear that any special plea was filed within ninety days from the commencement of the first term, or at any other time, the plea is presumed to be the general issue. Rules of Court, 9, 11, 12, 14 (56 N. H. 581, 582). The plaintiff, in technical terms, counting on his own seizin and a disseizin done to him by the defendant, says the land is his, and the defendant has wrongfully entered upon it, and withholds the possession of it from him. The defendant, by the plea of *nul disseizin*, admits that he is in possession of the land, claiming a freehold. On this plea, the plaintiff, if he has title and a right of entry, is conclusively presumed to have entered, and to have become seized according to his title, and to have been ousted by the defendant. Neither party can deny that the defendant had actual possession at the date of the writ. The only question is one of title at that time; and there being no claim that Cameron then had any interest in the land, and the sole question being which of the parties to this suit was then the owner of the land, the previous eviction of the plaintiff's devisor by Cameron is no part of the plaintiff's case. His complaint is, not that Cameron put Cephas out of possession, but that the defendant wrongfully keeps the plaintiff out; and the remedy he asks is, not an execution for the damages Cephas could have elected to recover in covenant broken, but a judgment for the land, the enforcement of which, he claims, will be a partial fulfilment of the defendant's covenant to warrant and defend the land to Cephas, his heirs and assigns, forever. In pleading, the parties agree that the defendant excludes the plaintiff from possession; and the issue is, whether between them the plaintiff has such a legal title that his admitted exclusion by the defendant is wrongful. *Mills* v. *Peirce*, 2 N. H. 9; *Tappan* v. *Tappan*, 36 N. H. 98, 120; *Graves* v. *A. M. Co.*, 44 N. H. 462, 463. If, by the second mortgage and its foreclosure, the defendant's right of redeeming the land from the first was sold and accepted in payment of the second, the defendant claims that his payment of the first operated as an equitable assignment of it to himself; and that as holder of it he was entitled to the possession of the land. The only question argued by him is whether this action could have been maintained by Cephas against his warrantor, the defendant; and it is assumed that there is no other question on which our opinion is desired. If Cephas were the plaintiff, his eviction by Cameron would be immaterial.

At a former argument of the case, the defendant was understood to contend that Cephas, by his foreclosure of the second mortgage, assumed a duty of paying the first, and caused his own eviction by his wrongful non-performance of that duty. But on this point the last argument shows there is no controversy. Counsel agree that neither before nor after his foreclosure of the second mortgage was Cephas under any legal obligation to any one to pay the first, and that his non-payment of it is no legal cause of complaint. The law of the case does not turn upon any act of benevolence due from the defendant to Cephas, or from Cephas to the defendant, or upon any moral duty either of them owed himself. If Cephas had assumed the payment of the first mortgage, or in any way had become bound to pay it, there would have been a question that is not presented by the agreed facts. In the full covenants of warranty, which were a part of his mortgage, he held the position of covenantee, and the defendant held the position of covenantor. Those positions were never reversed or modified by any agreement, expressed or implied, that Cephas would remove any incumbrance or pay any debt, or by any obligation of removal or payment assumed by him or laid upon him. Had he taken the land in payment of both mortgages, the payment of the first would have been his enforcible legal duty: having no such duty, he did not so take the land.

The defendant having contracted both debts, made both mortgages, and warranted the land in the second against the first, it was his duty to discharge the liabilities he had incurred. Against the warrantor the rights of the warrantee were not impaired by his exercising his right of not performing the warrantor's duty of paying the first mortgage debt. Rawle Cov. (4th ed.) 268, 269, 270. It does not appear that the warrantee had any money; and for aught that appears the defendant had money on hand with which his duty could be performed. It is not claimed that Cephas's right to use the covenants of his mortgage as an estoppel depended on the pecuniary ability or inability of either of them to pay the first mortgage, which, it is admitted, Cephas was under no obligation to pay. Before his foreclosure he probably could have sold his note and mortgage; in January, 1860, when his foreclosure was completed, he probably could have sold his property: but neither sale would have been a payment of the first mortgage. Being merely a mortgagee, warrantee, and payee, before foreclosure, and merely a grantee and warrantee afterwards, he was under no more obligation to sell his property, or hire money, for the purpose of paying his warrantor's debts, than to pay them without hiring or selling. He was in no fault of omission or commission. During the year of Cephas's foreclosing possession, the value of the land being not less than the amount of both debts, the defendant, being able to pay both, or cause both to be paid, in money out of the proceeds of a sale of the land, was apparently in no straits,

and under no necessity of making a foreclosing sale of the land for less than its value.

The note given by the defendant to Cephas was payable in money. The mortgage by which the note was secured was, in form, the defendant's conditional sale of property to Cephas by deed, with full covenants of warranty. The condition was, that if the defendant paid Cephas a certain sum of money agreeably to the note, the deed should be void. On the one hand, the defendant could avoid the sale by payment of the debt in money : on the other hand, if the sale were not avoided by such payment, it could be completed and made absolute by strict foreclosure, terminating the conditional character of the deed. By the contemporary law, adopted by the parties as a part of their contract (*Brine* v. *Ins. Co.*, 96 U. S. 627, 637), the defendant's right to avoid the deed by paying the debt in money,—otherwise called his right to redeem the mortgaged premises,—could be barred by Cephas's entry into the mortgaged premises under process of law and continued actual possession thereof for one year. Rev. Sts., *c*. 131, *s* 14; Laws 1854, *c*. 1531; G L., *c*. 136, *s*. 14. This is the bargain they made. If their agreement had been incorrectly stated in the note and mortgage, the misstatement could have been corrected on a bill in equity for a reformation of those instruments. *Fowler* v. *Hart*, 13 How. 373; *Kilmer* v. *Smith*, 77 N. Y. 226; *Smith* v. *Truslow*, 84 N. Y. 660, 661; *Hitchins* v. *Pettingill*, 58 N. H. 386; 1 Greenl. Ev., *s*. 296, *a;* Rawle Cov. 521, 696. No correction having been made by that process, their contract is to be found in the note and foreclosed mortgage, conclusively presumed to be free from error. *Bell* v. *Morse*, 6 N. H. 205, 209; *Annan* v. *Baker*, 49 N. H. 161, 172.

They could have made the note payable in other property than money. *Tibbets* v. *Gerrish*, 25 N. H. 41. In the mortgage deed of the land they could have inserted a proviso that Cephas assumes the prior mortgage debt, and agrees to pay it. Under such an assumption of that debt he would be legally bound to pay it, and would hold the land as a primary fund for its payment, and for the defendant's benefit to that extent. *Marsh* v. *Pike*, 1 Sandf. Ch. 210—*S. C.*, 10 Paige 595; *Blyer* v. *Monholland*, 2 Sandf. Ch. 478; *Garnsey* v. *Rogers*, 47 N. Y. 233; *Comstock* v. *Drohan*, 71 N. Y. 9; *Campbell* v. *Smith*, 71 N. Y. 26; *Slauson* v. *Watkins*, 86 N. Y. 597; *Schmucker* v. *Sibert*, 18 Kans. 104; *Moore's Appeal*, 88 Penn. 450; *Lappen* v. *Gill*, 129 Mass. 349; *Locke* v. *Homer*, 131 Mass. 93; cases cited in 26 Am. Rep. 660; Jones Mort., *s*. 740. There was no such agreement, written or oral, and no understanding to that effect. In an assessment of Cephas's damages in an action of covenant, an offer to show the consideration of his mortgage by parol evidence might require an examination of the authorities on that subject. Rawle Cov. 257–260; 1 Greenl. Ev., *ss*. 26 *n*. 285, 304; *Hubbard* v. *Ensign*, 46 Conn. 576, 585. If the defendant, instead of admitting that Cephas was under no obliga-

tion to pay the first mortgage, had offered parol evidence of his agreement to pay it, it might have been necessary to inquire whether such cases as *Bolles* v. *Beach*, 2 Zab. 680, *Preble* v. *Baldwin*, 6 Cush. 549, and *Burnham* v. *Dorr*, 72 Me. 198 (Rawle Cov. 451–453), are in conflict with the rule that finds in the written contract the exclusive and conclusive evidence of the intent and agreement of the parties, and does not suffer the writing to be varied by a contemporaneous parol agreement, or to be reformed by the insertion of such an agreement in a suit at law. *Howe* v. *Walker*, 4 Gray 318, 319; *Estabrook* v. *Smith*, 6 Gray 572, 579; *Spurr* v. *Andrew*, 6 Allen 420; *Conner* v. *Coffin*, 22 N. H. 538, 543, 544; *Proctor* v. *Gilson*, 49 N. H. 62; *Wells* v. *J. I. M. Co.*, 47 N. H. 235, 253, 254. No evidence being offered to show that Cephas agreed to remove the prior incumbrance, and it being admitted that he was not bound to remove it, there is no occasion to inquire whether such evidence would impair the defendant's covenant that there was no prior incumbrance, or exempt him from the performance of his warranty.

They could have inserted a clause reciting the fact that the land was subject to a mortgage made by the defendant to Atkinson, and excepting that incumbrance from the scope of the grant and all the covenants. While such a clause would not have imposed upon Cephas an obligation to remove that incumbrance, it would have materially modified the defendant's obligation, and given him an opportunity to raise the question whether, between him and the second as well as the first mortgagee, the land was the primary fund for the payment of the first mortgage. *Woodbury* v. *Swan*, 58 N. H. 380; *Lawrence* v. *Towle*, 59 N. H. 28, 30; *Piper* v. *Hilliard*, 52 N. H. 209, 212; *Ryer* v. *Gass*, 130 Mass. 227, 230; *Townsend* v. *Ward*, 27 Conn. 610, 615; *Stevens* v. *Church*, 41 Conn. 369; *Hubbard* v. *Ensign*, 46 Conn. 576; *Johnson* v. *Zink*, 51 N. Y. 333; *Hopkins* v. *Wolley*, 81 N. Y. 77, 80, 81, 85: *Manwaring* v. *Powell*, 40 Mich. 371, 374; *Taylor* v. *Mayer*, 93 Penn. 42. On a bill in equity brought by the mortgagor to reform the second mortgage by inserting such an excepting clause, he would undertake to prove it was a part of his agreement with Cephas, and to explain why so great a diminution of the written covenants was left to be proved by parol instead of being expressed in the instrument.

They could have omitted the covenants. *Atherton* v. *Toney*, 43 Ind. 211, 215, was an action upon a note for $300, given by the defendant to the plaintiff. The defendant pleaded in set-off a note for $350, given by the plaintiff to T., and by him assigned to the defendant. The plaintiff replied that the $300 note was given in part payment of land sold by the plaintiff to the defendant without warranty, the land being subject to a mortgage to T. to secure the $350 note. It was held that the defendant, accepting a deed without covenants, was a grantee of the equity of redemption only,

and took the land charged with the payment of the mortgage, and that the price was presumed to be the value of the equity. The court say that to allow the defendant's set-off "would enable him to hold the whole interest in the land, when he purchased only the equity of redemption. It would give him the benefit of a covenant against incumbrances when none was made." A mere omission of all express covenants in Cephas's mortgage would have raised the question whether the old doctrine of implied covenant of land title has been abandoned in this state. Broom Legal Maxims 418.

The warranty mortgage deed could have been qualified by a proviso that if Cephas foreclosed he should accept the land in payment of the debt due to Atkinson as well as the debt due to himself, or should hold the land as a fund for the payment of the prior mortgage, or charged with its payment, and for the defendant's benefit to that extent. They could have provided that the deed should be a conveyance of the right of redemption only, without regard to the value of the land, if the defeasible character of the deed were extinguished by foreclosure; or that the deed should be a conveyance of the right of redemption only, if its defeasible character expired under foreclosure, and if the land were worth the amount of both mortgages, or $100 or $1,000 less than that amount, or $100 or $1,000 more than the second. Various stipulations inserted in the instrument would have qualified the covenants of title and warranty, and made the conveyance a grant of a mere right to hold the land by performing the condition of the prior conveyance. But there is no qualifying stipulation in writing; and an oral or implied agreement at variance with the grant or covenants is not one of the facts of the agreed case.

The property which the defendant took the responsibility of conveying to Cephas was the tract of land described and demanded in the declaration, and not that tract subject to the Atkinson mortgage, or the defendant's right of redeeming the tract from that mortgage, or his right, title, and interest. The fact that the deed was defeasible by payment of the note in money, and in default of such payment was capable of becoming absolute against the grantor by foreclosure on the land, did not make the warranted title a title of anything less than the land. His unqualified covenants were that he was the owner of the land, was rightfully seized of it in fee simple, and had good right to convey it; that the land was free from incumbrance; and that he would warrant and defend the land to Cephas, his heirs and assigns, forever, against the lawful claims of all persons.

If his warranty of the land had been merely against all persons claiming by, from, or under him, he would have been estopped to set up any title under the prior mortgage. *Kimball* v. *Blaisdell*, 5 N. H. 533; *Bell* v. *Twilight*, 26 N. H. 401; *Robertson* v. *Wilson*, 38 N. H. 48; *Gibbs* v. *Thayer*, 6 Cush. 30. Such a warranty, with

no words of grant, would have been sufficient. *Brown* v. *Manter*, 21 N. H. 528; *Currier* v. *Janvrin*, 58 N. H. 374. By the ancient technical rule, "in conveyances in fee simple containing the words 'give, grant,' etc., a covenant of warranty is implied in the word 'give'" (4 Kent Com. 473, 474; Rawle Cov. 457); and in *Crouch* v. *Fowle*, 9 N. H. 219, 222, the court saw no ground on which the authorities establishing this construction could be overruled. No particular form of words is necessary in the creation of a covenant; any words are sufficient which show the intention of the parties. The question is one of intent and meaning, and not of style. From the words "grant, demise," etc., in a lease, the law implies a covenant that the lessee shall hold and enjoy the term against all lawful incumbrances. *Lovering* v. *Lovering*, 13 N. H. 513, 518–520; Rawle Cov. 462, *n.* 2. "Parties not conversant with the law ordinarily understand" the covenant of the grantor's lawful seizin in his own right in fee simple "as an assurance of a title, and we are of opinion that they have the right so to understand it." *Parker* v. *Brown*, 15 N. H. 176, 187. "That which shows covenants of seizin and of right to convey, to be broken, is their falsity. If the covenants are true, they remain inviolate; if they are not true, they are broken." *Lockwood* v. *Sturdevant*, 6 Conn. 373, 385.

"A grantor, conveying by deed of bargain and sale, by way of release or quitclaim of all his right and title to a tract of land, if made in good faith, and without any fraudulent representations, is not responsible for the goodness of the title beyond the covenants in his deed. . . . A deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seized or possessed at the time; and does not operate to pass or bind an interest not then in existence. . . . But this principle is applicable to a deed of bargain and sale by release or quitclaim, in the strict and proper sense of that species of conveyance. And, therefore, if the deed bears on its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title in the technical sense of the term, the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance. The authorities are very full on this subject. . . . The principle deducible from" the "authorities seems to be, that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a

particular estate in the premises, which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication,—the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies. The reason is, that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it. The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common-sense and justice of every one. And although it debars the truth in the particular case, and therefore is not unfrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood,— would be the denial of a previous affirmation upon the faith of which persons had dealt, and pledged their credit or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak." *Van Rensselaer* v. *Kearney*, 11 How. 297, 322–326; 1 Gr. Ev., ss. 22–24.

However defective the defendant's ownership, he had legal capacity to bind himself by a sale of this tract of land with full covenants of warranty, for less than its value, and to make the sale by foreclosed mortgage. A decision denying his power to preclude himself from asserting the falsity of his declarative covenants, and affirming his power to wrest the land from Cephas in violation of warranty, would unsettle many titles acquired on the faith of fundamental principle. A decision sustaining the position taken in defence would remodel Cephas's judgment, and the rest of his foreclosure, completed with the defendant's active coöperation twenty-two years ago, give the defendant the land free from the mortgage deed that became absolute at that time, discharge him from the estoppel of the covenants made by him in that deed, and leave him discharged by the foreclosure from the mortgage debt. This would be done by holding that against him the warranty mortgage he made of the land was a quitclaim mortgage of his defective title, or had no more estopping effect and was no better than such a quitclaim; that, against him, a foreclosure on the land, terminating the defeasibility of the deed, and leaving it an absolute warranty conveyance of the land, was impossible; that the foreclosing judgment for the land, executed on the land, was erroneous, and,

although unreversed and unaltered, was, between its parties, a judgment neither rendered for nor executed on the land; that the foreclosure on the land applied in payment a right to redeem the land from an incumbrance against which the foreclosed mortgage warranted the land; and that, against the warrantee, the warrantor could enforce the incumbrance against which he had covenanted to defend him.    A mortgage of an equity of redemption that secures the payment of a debt by foreclosure on the equity, according to an agreement of the parties, accomplishes its purpose.    Here was no such mortgage, foreclosure, agreement, or purpose.    If the note and mortgage were written correctly, an alteration of the contract, making the note payable in an equity of redemption, or making the mortgage a conveyance of and foreclosable on nothing but an equity, or erasing or restricting the covenants, would not be an exercise of any authority vested in either branch of the government of this state.    In this suit, the agreement that determined the rights of Cephas and the defendant is incontestably proved by the note and mortgage.

While the mortgage does not purport to be a conveyance of a mere right of redemption, it is not silent on the subject.    Its covenants are the defendant's positive declaration that a right of redeeming the land did not exist.    If that written asseveration had been confirmed by an oath and every other sanction known to the law, it would not have been less subject to contradiction by parol, or more conclusive as an estoppel.    A mortgage is an assignment of covenants running with the land in previous deeds (*Varick* v. *Briggs*, 6 Paige 323, 331), even when the mortgagor retains the legal title and right of possession.    *Devin* v. *Hendershott*, 32 Iowa 192, 195.    The mortgage title, guarded by the covenants contained in or assigned by the mortgage, is the mortgage security.    *Lockwood* v. *Sturdevant*, 6 Conn. 373, 390.    One who warrants land in two successive mortgages is as much estopped to deny the title of the second mortgagee as to deny the title of the first. *Wires* v. *Nelson*, 26 Vt. 13.    Against the defendant, Cephas's mortgage, purporting to be a conditional deed of the land, was security that his note should be paid, not in a right of redemption which the defendant covenanted did not exist, or in such property as he might desire the grantee to accept, but either in money, or wholly or partly in land by that deed conveyed, and by that deed warranted to be free from incumbrance.    If the defendant's interest in the land had been a life estate, or a remainder after a life estate, or the land subject to his obligation to support one or more persons on it at great expense, and to perform many arduous duties, in addition to the payment of the first mortgage, Cephas could have accepted a mortgage of his interest.    But among the rights and remedies contained in and constituting the security given by the defendant, and accepted by Cephas, was that estoppel by deed which does not permit the warrantee's title to be contested by the

warrantor's pleading or proving the falsity of his covenants, or claiming the land in violation of his warranty. Between them, in pleading and evidence, the warrantor was estopped to deny that when he delivered the deed he had the perfect title which he covenanted he had. *Wark* v. *Willard,* 13 N. H. 389, 395; *Gotham* v. *Gotham,* 55 N. H. 440; *Fisher* v. *Milmine,* 94 Ill. 328.

As against the defendant, before foreclosure, Cephas was owner of the land for the remedial purpose of obtaining payment of his note in money, or in land conveyed and warranted to him by the defeasible deed. The defendant reserved no right of retaining possession. Seizin, right of entry and possession, right to maintain a writ of entry against the defendant for the possession and right to use the defendant's covenants of title and warranty as an estoppel, were vested in Cephas, not by foreclosure or breach of condition, but by delivery of the deed in 1855. *Chellis* v. *Stearns,* 22 N. H. 312, 314; *Furbush* v. *Goodwin,* 29 N. H. 321, 332; *Tripe* v. *Marcy,* 39 N. H. 439, 444; *Burnside* v. *Twitchell,* 43 N. H. 390, 393; *Fogg* v. *Hoskins,* 57 N. H. 484, 487; *Cotta* v. *O'Neal,* 58 N. H. 572; *Howe* v. *Wadsworth,* 59 N. H. 397; *Gray* v. *Gillespie,* 59 N. H. 469; *Bellows* v. *Railroad,* 59 N. H. 491; *Treat* v. *Pierce,* 53 Me. 71, 77; *Gilman* v. *Wills,* 66 Me. 273; *Newhall* v. *Wright,* 3 Mass. 138, 155; *Hutchins* v. *King,* 1 Wall. 53, 58; Cruise Dig. XV, *c.* 2, *s.* 11; 4 Kent Com. 154, 159, 160, 162, 164; *Chamberlain* v. *Meeder,* 16 N. H. 381; *Foss* v. *Strachn,* 42 N. H. 40; *Gotham* v. *Gotham,* 55 N. H. 440. They were part and parcel of his remedial right, and elements of his security, so long as his deed remained defeasible; and they could not be divested by the foreclosing termination of the defeasibility of the instrument from which, by express statute, all the mortgaged premises ceased to be redeemable in 1860. In a certain sense, the interest conveyed to him by that instrument in 1855 was personal property, a lien, an incident of the debt, a chose in action, and not an estate in the land: in a certain sense it was an interest in the land. Between some persons, for many purposes, the defendant was the owner of the land: between some persons, for the purpose of securing payment of a debt in money or land, each of the mortgagees was the owner. *Southerin* v. *Mendum,* 5 N. H. 420, 429, 430; *Ellison* v. *Daniels,* 11 N. H. 274, 279, 280; *Orr* v. *Hadley,* 36 N. H. 575, 578; *Morrison* v. *Manchester,* 58 N. H. 538, 560; *White* v. *Whitney,* 3 Met. 81, 84, 85. The character and value of Cephas's interest did not depend upon its name. What legal rights and remedies it was composed of, from 1855 to 1860, is not an open question. The rights of entry, possession, action, and estoppel, conveyed to him by the mortgage deed in 1855, having continued to be his until the extinction in 1860 of the defendant's right of redeeming the land from that deed, nothing happened that could separate one of those rights from the others, or extinguish all or any of them, when the deed, ceasing to be a mortgage, continued, between its

parties, to be a warranty deed of the land on which it was fore-closed. The expiration of the year of Cephas's foreclosing posses-sion did not frustrate the mortgage purpose of securing payment of his note in money or warranted land.

In the consideration of the questions argued by the defendant, Cephas's mortgage may be called junior or second: but a word thus used for convenient designation does not signify that, for the legal purpose of ascertaining their rights, there was any other mortgage. The defendant, being estopped to say there was a prior one, could not plead or prove that Cephas's was second. This personal disability, voluntarily assumed by the warrantor as a means of strengthening his credit, increasing his ability as a bor-rower and purchaser, and inducing a desired contract, was not removed by any legal or equitable purpose of the warranted land-security. Whether that security was realty or personalty, his dis-abling and enabling covenants, included in it, and pledged as a part of his business capital, were not inferior to the rest of the mortgage in legal or moral obligation. They guaranteed the fore-closing application of a perfect land-title to the payment of the debt, if payment were not made in money before foreclosure. For the purpose of ousting the warrantee after foreclosure, could the warrantor aver and prove his covenants of title were a fiction? This question of good faith finds no answer in the fact that for many purposes before foreclosure, the security of which the cove-nants were a part, was not real estate. Had payment been made in chattels previously mortgaged to a third person, the payer could not take them from the payee on the outstanding mortgage, in violation of the implied warranty (*Sherman* v. *Champlain Trans. Co.*, 31 Vt. 162, 175); and a title is as well fortified when its warranty is expressed in writing as when it is implied from circumstances.

It does not appear that at the date of the second mortgage the land was worth enough to pay the first; and the estopping effect of the second grant and the accompanying covenants did not de-pend upon the value of the land on which that warranty grant was foreclosed. When that grant was made, it was, between its par-ties, a conditional conveyance of the soil; and the title protected by the covenants was the same, whether the soil was worth more than both debts, or less than the first. If the value of the land, when it was conditionally conveyed to Cephas in 1855, was less than the first debt, or more than both debts, or equal to the second and half of the first, this circumstance did not deprive the deed of its estopping power at that time; and by the subsequent increase or decrease of the value of the land, the grant of the land was not changed into a grant of a mere right of redemption, and the war-rantor was not any more or any less estopped to set up the prior incumbrance against his covenant that it did not exist, or against his general warranty. Strict foreclosure on a mortgaged tract of

land, being an absolute and perpetual statutory bar against the mortgagor's right of redeeming that tract, whether it is worth more or less than the mortgage debt, is necessarily the completion of an absolute sale of the land thus rendered irredeemable; and the price is necessarily the amount of the debt when the tract is worth that amount or more. The fact that the price for which land is sold is less than its value does not invalidate the sale, release the vendor from his covenants, or empower him to violate them, or to assert their falsity. Cephas's mortgage having been foreclosed on the whole of the land, the value of the property thus sold to him, and his knowledge of its value, did not alter the property or his foreclosed mortgage, and were not admissible evidence on the question whether his warranting defender could rightfully be his disseizor.

If the defendant's grant of the land to Cephas, instead of becoming absolute by foreclosure, had been absolute originally, parol evidence of the grantee's knowledge of a defect in the grantor's title would not interpolate a modification of the grant or covenants; and the condition, reserving for the grantor a right to avoid the deed by payment of the note in money, did not modify the description of the granted premises, or the estopping operation of the covenants, nor introduce an agreement that they should be modified if, by foreclosure, the grant became an unconditional sale. "The vendor is under no compulsion to make covenants when he sells lands, but having done so he must keep them, or respond in damages for injury sustained by their breach. Nor is it a release or discharge of the covenant to say that both parties knew it was not true, or that it would not be performed. . . . The reason the purchaser insists upon covenants for title . . . is because he either knows or fears that the title is not good." *Beach* v. *Miller*, 51 Ill. 206; Rawle Cov. 120 (4th ed.). "The obligation of covenants of warranty cannot depend on the knowledge or want of knowledge of the parties to the covenants." *Lloyd* v. *Quimby*, 5 Ohio St. 262, 265.

Parol evidence that Cephas, when he received the defeasible grant of the land, was informed of the prior mortgage by the defendant, does not change the grant into a conveyance of a mere right of redemption, and does not expunge the covenants, or reduce their sweeping effect, but shows a reason for the grantee's requiring the grantor to warrant the land, and assume the responsibility of maintaining the title. If the grantor's and grantee's title were perfect and unquestioned, the covenants would be inoperative and useless, the grantee's right to enforce them could not be exercised; and his knowledge of the indisputable character of the estate conveyed would tend to show he did not rely on them. While the defendant's oral statement, that the land was subject to an incumbrance, did not annul or limit his written statement to the contrary, or his written warranty of the land, it informed the covenantee of a fact

that made the covenants operative, and gave him special cause to rely upon them. But in law, it is immaterial whether the covenantor said his written covenants of perfect title might be useful because they were false, or said they would be useless because they were true. Parol evidence of a grantee's knowledge of one incumbrance and his ignorance of another does not show the legal meaning of his warranty deed. Its construction is the ascertainment of the understanding and intention of the parties from competent evidence; and the power of the covenants to prohibit and exclude the grantor's denial of them does not depend upon the grantee's being unaware of their falsity, and the consequent opportunity he may have to use them as an estoppel. The defendant's covenants that would have been made ineffectual by their truth were not made void by the grantee's knowledge of their untruth, as they would not have been by his knowledge conclusively presumed from the registry of the first mortgage, if it had been recorded at the date of the second.

Upon any other conclusion, all incumbrances and defects of a grantor's title, legally shown by the registry of deeds, or by the record of attachments, taxes, or other liens, would be excepted out of the covenants of a warranty deed. Such covenants are not released or qualified by the public record that gives incontrovertible notice of their falsity and consequent utility, or by the actual notice required by the act of 1860. G. L., c. 275, s. 6. Between Cephas and the first mortgagee, the former's knowledge of the first mortgage was equivalent to its registry. Rogers v. Jones, 8 N. H. 264, 268; Brown v. Manter, 22 N. H. 468, 471; Tucker v. Tilton, 55 N. H. 223. Between Cephas and his warrantor, that knowledge was as futile as a registration of the incumbrance, the existence of which the warrantor was estopped to assert. In favor of the warrantor, and against his warrantee, the latter's actual or constructive knowledge of the prior mortgage, like the existence of that mortgage, was not a pleadable or provable fact. Chamberlain v. Meeder, 16 N. H. 381, 384; Rawle Cov. 117.

A highway is an incumbrance of the soil on which it is laid, although it may greatly enhance the value of adjoining land, and although when it is a thoroughfare, open, visible, and constantly used by the public, it is a defect of title, against which the soil is generally understood not to be warranted. An unqualified warranty deed of a tract beneficially or injuriously incumbered by a highway, against which the grantor and grantee understood the tract was not warranted, would be so reformed, on a bill in equity, as to express their understanding; and its reformation, when necessary for the prevention of injustice in an action of covenant between them, would ordinarily be attended with little expense or delay. Metcalf v. Gilmore, 59 N. H. 417, 432. But in their suit at law, parol evidence of the grantee's knowledge of the existence of the way would not be admissible to alter the deed, or disprove

the breach of covenant. The most that could be claimed for such evidence would be a tendency to prove that the unlimited covenants did not truly express the intention and implied agreement of the parties; for which error the remedy would be a decree in chancery amending the written instrument that would be conclusively presumed, in the suit at law, to be a correct statement of the contract. *Goodeno* v. *Hutchinson*, 54 N. H. 159, 163; *Woodman* v. *Spencer*, 54 N. H. 507, 517, 518; *Sleeper* v. *Laconia*, 60 N. H. 201; *Sargent* v. *Gutterson*, 13 N. H. 467, 474. " How can the plaintiff's knowledge destroy the effect of the defendants' covenants? Suppose the defendants had sold a farm, which they and the purchaser both knew they did not own: could that knowledge destroy or affect the nature of the covenant of seizin? If not, by what rule can such knowledge any more impair a covenant of warranty against incumbrances?" *Hubbard* v. *Norton*, 10 Conn. 422, 432.

" If the question of an incumbrance were to be determined by its notoriety, or, what is the same thing, by its being known to the purchaser, it must, to preserve consistency, be extended to all incumbrances. And in that view, the grantee could not recover upon this covenant for paying a mortgage which he knew existed at the time of his purchase. But the contrary is perfectly well established. . . . And if the question whether a highway is an incumbrance upon land is to be determined by the fact of its being open and notorious, it resolves itself into this, whether it was the intention of the parties to treat it as an incumbrance or not. And the same rule should equally apply to a mortgage which the purchaser agreed to pay. But no lawyer will contend that in such a case, if the grantor covenants against all incumbrances, he is not liable to refund the money paid upon the mortgage by the grantee; that is, he is so liable at law. This is the written contract of the parties, and it cannot be set right in a court of law where the writing is the exclusive evidence of the contract. But in such a case, the party must resort to a court of equity." *Butler* v. *Gale*, 27 Vt. 739. " If indeed the agreement of the parties has been improperly or imperfectly set forth in the conveyance, the familiar jurisdiction of equity in the reformation of deeds on the grounds of fraud and mistake may be successfully resorted to; but every court of law which enforces the rule that parol evidence is not admissible to control or contradict the effect of written instruments must, in an action on the covenant against incumbrances, exclude evidence to show that it was the agreement of the parties that the covenant was not to extend to a particular incumbrance not expressly excepted from its operation." Rawle Cov. 118 (4th ed.). Such evidence is as incompetent to alter or contradict a deed in a real action as in any other suit at law.

The demanded premises are the land, and not a right of redemption; the foreclosure of the second mortgage on the demanded

premises is one of the facts of the agreed case; and after the discharge of the case, this fact will not be controverted by the existence of the first mortgage. *Palmer* v. *Fowley*, 5 Gray 545; *Doten* v. *Hair*, 16 Gray 149; *Cronin* v. *Hazletine*, 3 Allen 324; *Cochran* v. *Goodell*, 131 Mass. 464; *Cavis* v. *McClary*, 5 N. H. 529; Jones Mort., ss. 1251, 1285. The power of the holder of the first to prevent Cephas's possessory foreclosure against the defendant, is an irrelevant question. The statute does not provide that the mortgagee's entry into the mortgaged premises under process of law, and continued actual possession thereof for one year, shall not bar the mortgagor's right of redemption if the mortgagor has no title, or an imperfect one, or if any third person has an unexercised right to prevent the entry and possession. The defendant's right to redeem the land from the junior mortgage could be barred by the foreclosure of that mortgage on the land, the necessary possession not being prevented.

Against the mortgagor, after entry made by the mortgagee, foreclosing possession held by the mortgagor as his tenant is as good as if held by the mortgagee in person. *Howard* v. *Handy*, 35 N. H. 315, 325. Cephas did everything required by law, and everything possible to be done, for raising the foreclosing bar; and he encountered no resistance or remonstrance from any quarter. The mortgagor aided him by holding the land as his tenant, and the owner of the prior mortgage did not interfere. These facts present the question, not whether Cephas waived a foreclosure on the land, or elected a foreclosure on the defendant's right to redeem the land from the first mortgage, or otherwise abandoned some right or remedy, but whether, without payment or foreclosure of the first, a bar against the defendant's right to redeem the land from the second could be raised by possessory foreclosure of the second with no opposition or objection. A denial of the legal possibility of a bar being so raised is a negation of a statutory clause of the contract. The land grant, and covenants of title and warranty, written in the mortgage; the judgment for the land, recovered by Cephas against the defendant in the foreclosing suit for the land; the writ of possession, issued for the enforcement of the judgment, reciting Cephas's recovery of judgment for the land, and commanding the sheriff to cause him to have possession of the land; the officer's execution of that writ, and his return upon it; and the year's possession of the land held by the defendant as tenant of Cephas,—were conclusive evidence, between them, that the land was the property on which the foreclosure was made. If the defendant was not concluded on this point, he could not be estopped to dispute any fact established against him by any deed he could make, or by any judgment rendered and executed against him in this or in any other case. *Adams* v. *Barnes*, 17 Mass. 365. The foreclosed mortgage, purporting to convey the whole title, did not work a forfeiture of the grantor's limited interest. G. L., c. 135,

s. 18; 4 Kent Com. 82, 83, 427; *Cole* v. *Lake Co.*, 54 N. H. 242, 279–287; *French* v. *Prescott*, [*ante* 27]. Between its parties, it was an absolute warranty deed of the land on which it was foreclosed, and not a contract binding the foreclosing warrantee to accept whatever defective title the warrantor happened to have. Against the warrantor, the foreclosure on the warranted land applied in payment the land on which the foreclosure was completed, and not the equity of redemption on which it was not begun.

Against Cameron, the defendant's right of redeeming the land from the first mortgage was a right to pay and annul that incumbrance, and hold the land upon his ante-mortgage title. Having exercised that right, instead of allowing it to be barred by foreclosure, he can now hold the land against Cameron. His payment of his debt to Cameron operated as a discharge of the first mortgage for the benefit of Cephas, or as an assignment of it to the defendant, preserving it for his benefit, and substituting him in place of Cameron, as would best serve the purposes of justice. *Hinds* v. *Ballou*, 44 N. H. 619, 620. Those purposes did not subvert the valid contract of the defendant and Cephas, or the reciprocal duties and rights existing between them as warrantor and warrantee. One of them was under an obligation to the other to pay the first mortgage; and that duty, the defendant admits, was not due from Cephas to any one. Had the defendant's payment of his debt to Cameron been a performance of Cephas's duty, the payment would have assigned Cameron's mortgage to the payer, even if he had taken a formal discharge; and his performance of his own duty of payment discharged the mortgage, although he took a formal assignment. *Brown* v. *Lapham*, 3 Cush. 551, 554, 555; *Wadsworth* v. *Williams*, 100 Mass. 126, 131; *Ryer* v. *Gass*, 130 Mass. 227, 229; *Burnham* v. *Dorr*, 72 Me. 198, 201; Jones Mort., ss. 864, 867, 876, 879. By permitting the transaction to operate as an assignment, the law would have given the defendant an unjust commission to release himself from his contract of warranty without his warrantee's consent, would have deprived Cephas of his equitable right to be paid in money or a perfect title of the warranted land, and would have paid him inequitably in a privilege of acquiring a title by performing his warrantor's broken covenants. It was not their agreement that if Cephas were obliged to resort to the security of the warranted land as a remedy for the non-payment of his note, he should receive in payment a part of the land, or a part of the title, equal in value to the debt, or that he should do the defendant's duty, pay him for doing it, or release him from it. By their agreement, the defendant's right to avoid the estoppel of his covenants by paying the amount due on the note was equitably prolonged till the end of the year of foreclosure. Justice did not alter the agreement, or change the right of foreclosing the mortgage on the warranted land into a right of foreclosure on a privilege of redemption.

*Lloyd* v. *Quimby*, 5 Ohio St. 262, 263, 265, was an action of covenant brought by Quimby against Lloyd who had mortgaged land with warranty to Quimby. Lloyd's equity of redemption had been extinguished by a decree in a foreclosure suit, without a sale ; and Quimby had been subsequently evicted by the foreclosure of a prior mortgage. It was held that the decree foreclosing the junior mortgage did not extinguish it as a conveyance, or affect the obligation of the covenants ; that the decree conveyed no title ; and that the equity of redemption being extinguished, the mortgage stood as an absolute conveyance in fee with its covenants in full force. The court say,—" It is true, the grantee, while the prior mortgage remained only an incumbrance, might have discharged it, if he possessed the pecuniary ability, and thus have saved himself from eviction ; but then, so might the grantor ; and the grantee, whether able or willing, or not, was in no way bound to do it, and had a right to expect that the grantor would do it ; while he, the grantor, was bound to do it—bound by the obligations of his express covenant."

In *Butler* v. *Seward*, 10 Allen 466, two mortgages of a lot of land, made by the plaintiff at different times, were held by the defendants ; and the second had been foreclosed. The plaintiff contended that, by paying the first, he could be let in to redeem the land from the second. The court say,—" The difficulty is, that in redeeming the first mortgage . . . he does not become an equitable assignee thereof, nor is he subrogated to the rights of the first mortgagee. Inasmuch as he was the mortgagor in both deeds, by redeeming the first mortgage he will in fact pay his own debt, and thereby discharge and extinguish the mortgage. He cannot therefore set it up as the ground of a claim to redeem a subsequent mortgage made by himself, which has been foreclosed. . . . It was his duty to pay and cancel the " first " mortgage, and to relieve the estate from this incumbrance as against the subsequent mortgagee to whom he had conveyed the estate with warranty. . . . There is another insuperable obstacle in the way of allowing the plaintiff to set up any right by virtue of the payment of the debt secured by the first mortgage, as a ground for reopening the foreclosure of the second mortgage. By the latter conveyance, he granted the estate with covenants of warranty against all incumbrances. This covenant estops him from setting up the first mortgage as against the defendants, who are assignees of the second, and to whom he would be responsible for a breach, if the first mortgage was allowed to have effect against the title acquired under the foreclosure of the second." The debt secured by the first mortgage not being paid by foreclosure or otherwise, Butler, as mortgagor, had a right to pay it ; but his paying it would not enable him to violate his contract of warranty, and deny the truth of his covenants, contained in the second mortgage. His inability to do that wrong would not arise from his paying or not paying

the first mortgage, or from an assignment or non-assignment of that mortgage by its original holder to the defendants or some other person.

By a warranty junior mortgage of land, the mortgagor is estopped to deny the mortgagee's title of the land.   *Cross* v. *Robinson*, 21 Conn. 379, 386, 387.   "A second mortgage purports to be a conveyance of the land itself, and as between the parties to the instrument it is such."   *Goodman* v. *White*, 26 Conn. 317, 320.   In New York "the process of collecting a mortgage debt is by a sale of the property, and an appropriation of the proceeds to the payment of the debt.   .   .   .   But our practice is entirely different.   Under that the petitioner [the mortgagee] is entitled to all the property mortgaged, unless his debt is paid."   *Waters* v. *Hubbard*, 44 Conn. 340, 349.   "Under our law, the creditor, in the event of non-payment of his debt as decreed, takes by law the thing pledged to apply on his debt.   .   .   .   But in the state of New York the law does not turn over to the creditor the mortgaged property, but only the net avails of a sale made under its own authority."   *Belmont* v. *Cornen*, 48 Conn. 338, 346, 347.   "After foreclosure and failure to redeem, the mortgagor ceases to have any interest whatever in the premises, and the mortgagee becomes the absolute owner."   *W. S. Bank* v. *Lawler*, 46 Conn. 243, 245.

In *Colwell* v. *Warner*, 36 Conn. 224, 234, 235, Colwell had given a first mortgage of land to Gorham, and a second to Warner; and Warner had foreclosed the second, and paid and taken an assignment of the first.   It does not appear whether the second was a warranty of the land or a quitclaim of Colwell's interest.   In other respects the case is like *Butler* v. *Seward*, 10 Allen 466; and the decisions, different in form, are alike in result.   Colwell's petition to redeem the land from both mortgages was dismissed.   He alleged that the land was worth more than the amount of both mortgages. It was found that, at the time of the foreclosure, the value of the land "was but little, if anything, in excess of" that amount, although it afterwards "advanced in value from fifty to one hundred per cent."   Its value was not held to be material.   The value, however great, did not relieve the mortgagor from his inability to hold the land against the foreclosed second mortgage, by exercising his indisputable right to perform the condition of the unforeclosed first.   Warner, holding the first, did not resist Colwell's payment of it: but he objected to Colwell's redeeming the land from the second after paying the first.   The court say,—"The doctrine contended for by the plaintiff [Colwell] will lead to this absurdity, that each holder of two successive mortgages upon the same property will have the right to redeem the other.   Thus the plaintiff, after redeeming the Gorham mortgage, will have the right to redeem the second, and the holder of the second will have the right to redeem the Gorham mortgage."   If the second contained a warranty against the first, it was, between Warner and Gorham,

"but a mortgage of the equity of redemption," as it was between Warner and Colwell if it was a quitclaim of the equity. The court did not hold that in law a warranty of the land would be a mere quitclaim of the warrantor's equity; and their opinion, given without consideration of any question of covenant or estoppel, is not a repudiation of the elementary doctrine affirmed by them in *Goodman* v. *White*, which estops a grantor to deny that a warranty deed, first or second, conditional or unconditional, made by him, and purporting to be a conveyance of land, is what it purports to be.

Many legal rights may be of no value to their possessor by reason of his lack of an opportunity to exercise them. A warrantee's right of estoppel, undoubted in law, may be unserviceable in fact. The warranty of an insolvent grantor, who had no title and never acquires any, or who had but half of the title and acquires no more, may be worth no more than his quitclaim. In *Colwell* v. *Warner*, if Warner's mortgage was a warranty, no outstanding title enured to him by estoppel, because no such title was acquired by Colwell. As Colwell's non-payment of the prior mortgage, and Warner's inability to resist it while it was held by Gorham, compelled Warner to pay it or lose his own security, the market value of his security might not have been enhanced by a warranty. But Colwell's non-acquirement of the outstanding title was not Warner's relinquishment of a legal right to avail himself of an expected or unexpected occasion to utilize any power of estoppel that was a part of his security. *Pillsbury* v. *Elliott*, 56 N. H. 422, 424.

If Warner's mortgage was drawn in a form legally equivalent to a mere quitclaim of the equity, the effect of its foreclosure is not material in this case. If it was a warranty mortgage of the land, the warrantor's breach of covenant could not compel the warrantee to accept a right of redemption, or any other unsatisfactory part of a land title, in payment of a note that was payable in money or a whole title; and could not, without the warrantee's consent, apply such a part in payment: but the grant could convey the right of redemption to him if he would accept it; and by exercising that right, he accepted it, and applied it in payment. "Has a mortgagor, whose equity of redemption has been foreclosed by a second mortgagee, a right to redeem the first mortgage? This question," say the court, "must be understood, of course, in its application to the facts of the present case, where the second mortgagee, after foreclosure, redeems the prior mortgage." For every legal view of the question thus understood, and considered on the ground thus stated, and for every practical purpose of that case, Warner's acceptance of the right of redeeming the land from the prior mortgage, in payment of the second, made it immaterial whether the second was a warranty or a quitclaim. Whichever it was, the question presented to the court, and the question to which they limited their opinion, was answered in the negative by Warner's acceptance of the equity, applying it in payment. The opinion,

expressly based on this decisive fact, does not support the proposition that if there had been no such acceptance, Colwell, by breach of mortgage covenants, could elect to pay Warner in a kind of property which Warner was not bound by the contract to accept, or could constrain him to abandon his right of foreclosure unless he would undertake to perform the mortgagor's covenants, on peril of losing all right of action for the debt they were made to secure.

In the present case, if the conveyance to Atkinson had not been made, the defendant's covenants of ownership and freedom from incumbrances, in his deed to Cephas, would have been true, and therefore inoperative; and Cephas's foreclosure, terminating the defeasible character of the grant of the land to him, would have applied all the granted land, however excessive its value, in payment of his note. If the Atkinson estate had been originally unconditional, the defendant, in Cephas's foreclosing suit, would have been estopped to deny the truth of his covenants of title (*Usina* v. *Wilder*, 58 Ga. 178); and if, having no interest in the land when he mortgaged it to Cephas, he had subsequently acquired a perfect title, he could not uphold it against his covenant that it did not exist: that covenant, being false, would be operative, and he would not overcome its estopping force by parol evidence that Cephas knew its falsity made it an estoppel. And the defeasibility of the Atkinson title, and Cephas's knowledge of it, did not extinguish the defendant's covenant that there was no such title, nor relinquish the covenantee's right to resort to the remedy of estoppel. For the purpose of the present inquiry, it is immaterial whether the defendant had no title, or whether his title was perfect or imperfect, when he made the grant to Cephas. In each case, the legal construction of that grant and its protective covenants, before and after it became unconditional, would be the same. A grantor and warrantor can no more alter the grant or the warranty by parol evidence when he had a defective title than when he had none.

When the deed was delivered to Cephas, it took effect against the grantor as a conditional grant of the land, with plenary covenants which the grantee could use as an estoppel until the end of the year of his foreclosing possession. From the day the defeasible grant was made by delivery of the deed, until it became indefeasible by completed foreclosure, the falsity of the defendant's covenants could not be asserted by him against Cephas. Had the first mortgage been assigned to the defendant before Cephas began his foreclosure suit, it would not have been a defence in that suit; and it could not have been foreclosed by the defendant against Cephas before the foreclosure of the second was completed. Whether the prior grant were originally conditional or unconditional, and whether it had or had not become unconditional by foreclosure, the defendant could not set it up against the second, in violation of his warranty, while the second remained defeasible.

*Chamberlain* v. *Meeder*, 16 N. H. 381; *Foss* v. *Strachn*, 42 N. H. 40; *Lincoln* v. *Emerson*, 108 Mass. 87; *Knight* v. *Thayer*, 125 Mass. 25; *Bush* v. *Person*, 18 How. 82; Jones Mort., *ss.* 682, 1483.

The foreclosure of Cephas's mortgage did not weaken his position on the land on which his foreclosure was made. It had the legal and equitable effect explicitly given it by statute. Commenced and completed on all the mortgaged premises, it barred the defendant's right to redeem those premises from the junior mortgage; and he being legally and equitably disabled to deny that they were the land, the bar was an extinguishment of the condition of the warranty grant of the land. "It would be extraordinary indeed if a mortgagee, by the very act of extinguishing the mortgagor's title, should destroy his own." *Gould*, J., in *Baldwin* v. *Norton*, 2 Conn. 161, 173. The warranty grant of land, ceasing to be defeasible between its parties, continued between them, to be a warranty conveyance of the land on which it was foreclosed. By no clause of the contract, or principle of the law, could the mere extinguishment of the defendant's right of redeeming the land from that grant erase the grant, and insert in its place a grant of so different and inferior a property as a right of redemption. If the parties had orally agreed that the bar, when raised, should work such an alteration of the grant, the deed could not be reconstructed in this suit. At the end of a year's foreclosing possession of the land, the bar that perfected the grantee's land title against the grantor by extinguishing the defeasibility of the grant, did not simultaneously create, and confer upon the grantor, a right to overthrow the perfected title by setting up against it what he could not have set up before the perfecting process was completed or begun against him. The incumbrance against which he promised to defend the land could be used by him as a weapon for depriving his warrantee of the land neither a moment before the warranty deed became absolute, nor a moment afterwards. As a protection of the grantee against such a violation of warranty, the estoppel was as effective after the warrantor's right of redeeming the land from that deed was barred, as before. In an action brought by the grantee against the grantor for the land, the foreclosure would not disprove the plaintiff's title. *Jarvis* v. *Deane*, 56 Me. 9; *Thorndike* v. *Norris*, 24 N. H. 454, 461.

Before the foreclosure of the second mortgage, Cephas as well as the mortgagor had a right to pay the first; and after that foreclosure, the mortgagor as well as Cephas had the same right, and the legal means of enforcing it. Rev. Sts., *c.* 131, *ss.* 4–13, 17; G. L., *c.* 136, *ss.* 4–13, *c.* 1, *s.* 16. Cephas acquired it, not by his foreclosure, but by his mortgage. It was a statutory incident of the second land grant made by the delivery of the deed to him, as it would have been if the deed had been unconditional originally instead of becoming unconditional by foreclosure. The foreclosure of the second was a bar, not against the mortgagor's right to annul

the first by performing the condition of the first, but against his right to annul the second by performing the condition of the second. Rev. Sts., c. 131, s. 14; Laws 1854, c. 1531; G. L., c. 136, s. 14. Had he exercised both rights, the title would now be in him as if neither of the grants had been made, and it would be immaterial which right he exercised first: and as he did not annul the second grant, it is immaterial whether he annulled the first before or after the second became absolute. The right of paying the first mortgage being in him, as mortgagor, after the foreclosure of the second as well as before, and no right being in him to hold the land against Cephas by paying the first before the foreclosure of the second, he lost by that foreclosure no other right than that of redeeming the land from the second; and this is the exact loss prescribed by the statutory terms of his contract. As he had a mortgagor's right to pay the first after as well as before the foreclosure of the second, and could not hold the land against Cephas by exercising that right before that foreclosure, and as Cephas could redeem the land from the first before as well as afterwards, that foreclosure did not pay the second by transferring from the defendant to Cephas either a right to pay the first, or a right to hold the land by paying the first.

As Cephas, before he foreclosed on the land, could waive his right to legal-tender cash, and receive any kind of currency, so he could accept any other property, in payment of his note. If he accepted, as payment in full, a conveyance of the defendant's right of redeeming the land from the prior mortgage, he would assume the responsibility of exercising the right he thus purchased. Whether he exercised it or not, his debt would be paid by his voluntary acceptance of the right as payment; and in a certain sense he would hold the land as a fund for the payment of the first, and for the benefit of the mortgagor to that extent. While he could not be compelled to accept the equity of redemption as payment, he could obtain payment in money by an execution sale of the equity, enforcing a judgment in assumpsit on his note. The sheriff's payment of his note in money would terminate his right to foreclose on the land. The purchaser, receiving a sheriff's deed of the right of redeeming the land from the first incumbrance (G. L., c. 238, ss. 1, 7), and not the defendant's deed of the land, or the defendant's warranty of the land against that incumbrance, would assume the responsibility of exercising the right he bought, and would hold the land as a fund for the payment of the first mortgage, as Cephas would have held it if he had accepted from the defendant a conveyance of the same right in payment of his note. *Tice* v. *Annin*, 2 Johns. Ch. 125, 128, 129; *Heyer* v. *Pruyn*, 7 Paige 465, 470; *Russell* v. *Allen*, 10 Paige 249, 255. The satisfaction of Cephas's execution by levy on property not mortgaged would be a payment of his debt in money, or other property. *Woodbury* v. *Swan*, 58 N. H. 380. If Cephas caused his execution to be levied on the

mortgaged land, the title thus acquired (G. L., c. 237, s. 12) would not be protected by the covenants of his mortgage. Electing to hold the land under the levy and not under his mortgage, he would hold it as a fund for the payment of the first mortgage, as if he had bought the equity at an execution sale, or had accepted a deed of the equity from the defendant as payment. So far as he obtained payment of the note by levy of an execution, or by accepting a new conveyance of any property as payment, he would waive the protection of estoppel against the prior mortgage; but he did not waive that protection by terminating its defeasibility.

If, on a bill in equity, Cephas had obtained a decree for a sale of the right of redeeming the land from the first mortgage, the payment of his note in money out of the proceeds of the sale would have had the same effect, in this suit, as payment in money out of the proceeds of a sale of the same right on execution in assumpsit. Payment of the debt in money by the sheriff out of the proceeds of the equity of redemption sold by the sheriff on legal process, would be equally effective, for the purpose of this case, whether the process enforced a judgment on the mortgage, or a judgment on the note. On the question of the effect of such a payment of the junior mortgage in money, it would not be material who was the highest bidder at the sheriff's sale. If Cephas had been the purchaser of the equity at such a sale, *McKinstry* v. *Curtis*, 10 Paige 503, and other cases of that class, would be relevant. Whether the auction sale of the equity were made on execution to satisfy a judgment at law in money, or on some foreclosing process issued by a court of equity to enforce payment of the junior mortgage debt in money, the purchaser, whoever he might be, would hold the land as a fund for the payment of the first mortgage. *Flanders* v. *Jones*, 30 N. H. 154, 161; *Vanderkemp* v. *Shelton*, 11 Paige 28, 34; *Mathews* v. *Aikin*, 1 N. Y. 595, 604. Buying at a foreclosing auction sale, not the mortgagor's covenant that the land was not subject to the first incumbrance, but the right of redeeming the land from the first, or the land subject to the first, and paying therefor a sum of money to be applied to the payment of the second, he would take, by such purchase, no right of action, or remedy of estoppel, upon the mortgagor's warranty of the land against the first. *Todd* v. *Johnson*, 51 Iowa 192.

A statute, prohibiting the payment of a mortgage debt in land by a foreclosing extinguishment of the defeasibility of the grant, and authorizing its payment in money by a judicial sale, would not nullify mortgage covenants of title. *White* v. *Whitney*, 3 Met. 81, 85–88; *Bush* v. *Person*, 18 How. 82; *Andrews* v. *Wolcott*, 16 Barb. 21, 25; Rawle Cov. 334, n. 4, 343–346. A warranty mortgage estops the mortgagor to deny either that he had the perfect title asserted by him in his covenants, or that it passed to the mortgagee; and title afterwards acquired by him vests in the mortgagee. *Tefft* v. *Munson*, 57 N. Y. 97. In *Jackson* v. *Littell*, 56

N. Y. 108, 112, *Andrews*, J., delivering the opinion of the court, says,—" The mortgage contained no covenants, nor did it purport to cover any interest not then existing in the mortgagors. When the mortgage was foreclosed, in 1851, the purchaser acquired the title which the mortgagors had when the mortgage was executed. The mortgage debt was paid out of the proceeds of the sale, or if insufficient for that purpose, a judgment was or might have been rendered against the mortgagors for the deficiency. The relation of mortgagor and mortgagee between the parties to the instrument was extinguished by the sale, and the mortgagors were thereafter under no duty to protect the title of the purchaser, nor were they precluded from subsequently acquiring an outstanding and paramount title to the premises. It may be conceded that when it is the intention of the parties to a mortgage, disclosed by the instrument, to subject the entire fee to the lien of the mortgage, any subsequently acquired title of the mortgagor will be bound by the mortgage, and will pass to a purchaser on the foreclosure. While the relation of mortgagor and mortgagee is subsisting, the acquisition of a hostile title by the mortgagor would be inconsistent with that relation; and it may well be held that any new interest in the mortgagor would enure to strengthen the security of the mortgage. But when a mortgage has been foreclosed, containing no covenants of warranty, I know of no principle upon which it can be held that a title subsequently acquired by the mortgagor will pass to the purchaser on the foreclosure. The purchaser is presumed to know the condition of the title which he purchases, and if it is defective his bid is regulated in view of such defect. If the premises bring enough to satisfy the mortgage debt, it would be inequitable to allow him to claim an interest subsequently acquired by the mortgagor, and which he did not purchase, and was no part of the consideration of the sale. If there is a deficiency, that becomes a personal charge against the party bound to pay the debt, in favor of the creditor. Different considerations would apply when the mortgage contained covenants of warranty. In that case, the consideration paid would represent the value of the land as warranted, and the mortgagor would be estopped from setting up an after-acquired title, against which he covenanted in the mortgage."

The case does not raise the question whether, by the law of this state, Cephas could have obtained, on a bill in equity, a decree for a foreclosure sale of the equity. *Green* v. *Cross*, 45 N. H. 574, 580; *Hall* v. *Sullivan Railroad*, 21 Law Rep. 138, 145, 146. Whatever methods were legally possible for paying him in money out of the proceeds of a sale of the equity, in pursuance of an agreement, or on legal process, no such method was employed. Instead of being thus paid in money, he was paid by the warranty conditional grant of the land to him, his judgment against the defendant for the land, his writ of possession issued and executed

against the defendant for the land, and a year's possession of the land under that judgment and that writ. The land grant, thus adjudicated, perfected, and made absolute against the defendant, under the law of strict foreclosure, was a title the grantee would not have had, if, under such statutes as have been enacted in New York and other jurisdictions, he had been fully paid in money out of the proceeds of a foreclosing auction sale of a right to redeem the land from the prior mortgage. 4 Kent Com. 181–186. For the purpose of this case, the payment of his note in money, by such a sale, would have differed from the foreclosure that was completed by him, as an extinction of a land title differs from its conclusive establishment. He became a purchaser of the land, not at an auction, or on a new agreement, but by virtue of his warranty deed divested of its condition in the manner prescribed by the statutory article of the mortgage contract. There was no rescission of the deed, no diminution of the granted premises, no new grant, and no acquisition of new title. The only application made of anything to the payment of his note was the original warranty conveyance of the land, rendered indefeasible by foreclosure.

The foreclosing application of the warranted land to the payment of his note was made without regard to the value of the land beyond the amount of the note thus paid. *Bolles* v. *Duff*, 43 N. Y. 469, 474. For the excess of value he was not made liable by the falsity of the defendant's covenants of perfect title, as he would not have been by their truth. Under the law of strict foreclosure, in default of payment in money, the application of warranted land to the payment of his note by the statutory process of possession, without accountability for any excess of value, was one of the objects of his warranty mortgage; and its conveying power would not transcend the accomplishment of that purpose. Strict foreclosure being an application of the land on which it is made to the payment of the debt, without such accountability, his foreclosure, completed on a part only of the warranted land, in value equal to or exceeding the amount of his note, would be a full payment of the note if the title did not fail; and being full payment, it would be a release of the rest of the land not included in it. *Green* v. *Cross*, 45 N. H. 574, 576; *Burpee* v. *Parker*, 24 Vt. 567; *George* v. *Wood*, 11 Allen 41. Being an application of the foreclosed part to the payment of his note, it would not be a release of the part thus applied: and his foreclosure on the whole, being a similar application of the whole, was not a release of the whole, or of any part. As foreclosure on a part, equal to or greater or less than the amount of the note, would not have removed the estoppel and let the defendant in to claim that part, so the foreclosure on the whole did not let him in to claim the whole. Conveying the land with warranty, and allowing the warranty deed to become absolute, he chose a position in which he could not avoid the deed or its foreclosure. The hardship he complains of is the sacrifice every

one elects to make who by foreclosed mortgage, or some less pre-meditated conveyance, sells any property, real or personal, for less than its value.

When it is said, with reference to the foreclosure of a mortgage on property worth no more than the amount of the debt, that the foreclosure operates as payment of the debt to the value of the mortgaged property, and that whenever the title to the land is per-fected by this process the debt is extinguished so far as there is actual value received (*Hunt* v. *Stiles*, 10 N. H. 466, 469), the meaning is, not that foreclosure on a tract of land worth more than the amount of the debt applies in payment only a part of the tract, or merely some interest in it less than the whole title, or any other property than the whole tract, or that such foreclosure is anything less than a bar against the right of redeeming the land from the foreclosed mortgage, but that if the land is less than the debt, the value of the land is the amount of partial payment, and if it is not less than the debt, the debt is fully paid.    *Hedge* v. *Holmes*, 10 Pick. 380, 381; *Dearborn* v. *Nelson* [*ante* 249]; Jones Mortgages, ss. 950, 952.

The defendant cites *Smith* v. *Packard*, 19 N. H. 575, *Hatch* v. *Kimball*, 14 Me. 9, and *Goodel* v. *Bennett*, 22 Wis. 565. In *Smith* v. *Packard*, a foreclosure on land applied the land to the payment of the debt: and if the value of the land was less than the amount of the debt, the balance was paid in money derived from a policy of insurance assigned to the mortgagee as collateral security. The foreclosure on the land did not destroy or curtail the mortgagee's land title, and did not apply other property to the payment of the debt. In *Hatch* v. *Kimball*, the defendant, without consideration, and for the apparant purpose of defrauding his creditors, conveyed land to his brother, and took back a bond for the defendant's con-tinued occupation of the land, and for a reconveyance to him on demand. His continued possession was regarded as constructive notice of the bond; and as his brother never had any beneficial interest in the land, the deed and bond being parts of one contract, the covenant of the deed was held to be neutralized and defeated by the bond. In *Goodel* v. *Bennett*, C, having a good land title from the defendant with warranty, had conveyed it to U S, who conveyed it to the defendant. The plaintiff, by taking a deed from C's administrator, acquired no title, and no estoppel against the defendant.

Before Cephas's foreclosure, his exercise of his right to pay the first mortgage would have raised an equity that would have kept the first in force in his hands. *Page* v. *Foster*, 7 N. H. 392. After his foreclosure of the second had applied to its payment land enough to pay both mortgages, his exercise of his right to pay the first would have raised no such equity. *Green* v. *Cross*, 45 N. H. 574, 585, 586. By paying the first, and presenting it as a claim against the defendant, he would not resort to the defend

ant's estopping warranty of the land against the first, but would assume the burden of showing an equity that would sustain the first in his own hands.  While the first was held by Cameron. Cephas had no opportunity to employ the covenants of the second as an estoppel against the defendant's setting up the first.  Cephas's payment of the first would have left him no opportunity for such an exercise of his right of estoppel, unless the defendant afterwards exercised his right of paying the first, and then claimed the land, or claimed the land in such a redemption suit as *Butler* v. *Seward,* 10 Allen 466.  But Cephas did not disclaim his right of estoppel, or renounce any opportunity of asserting it, by exercising his right of not paying the first.  The lack of an equity to keep the first on foot if he had paid it after foreclosing the second on land enough to pay both, would have had the effect of an acceptance of the land by him in payment of both.  But the lack of legal obligation on his part to pay the first, and his election to exercise his admitted right of not paying it, did not have the effect of such an acceptance.

He could have maintained a writ of entry against the defendant if there had not been a breach of the covenants ; and as a right of action for damages for such a breach was not a test of his right to maintain a writ of entry, so the measure of damages in covenant broken was not a test of his right of enforcing the covenants by estoppel in a real action.  Although in an action on the covenant of freedom from incumbrance, brought before he sustained any actual injury from its breach, he could have recovered nominal damages only (*Andrews* v. *Davison,* 17 N. H. 413, 416, *Morrison* v. *Underwood,* 20 N. H. 369, 371, *Willson* v. *Willson,* 25 N. H. 229, 235, Rawle Cov. 262, 288), his right of estoppel in his foreclosing writ of entry was as decisive as it would have been if he could have recovered substantial damages; and it would have been equally decisive in a real action between the same parties before the note was due.  *Furbush* v. *Goodwin,* 29 N. H. 321, 332 ; *Tripe* v. *Marcy,* 39 N. H. 439, 444 ; *Gray* v. *Gillespie,* 59 N. H. 469 ; *Gotham* v. *Gotham,* 55 N. H. 440.  Had his eviction occurred during the year of his foreclosing possession, he would have been entitled, by the rule in *Wetmore* v. *Green,* 11 Pick. 462, to such substantial damages as would enable him to remove the prior incumbrance at the defendant's expense ; and an order could have been made, if necessary for the defendant's protection, to secure the due application of the money.  *Morrill* v. *Hovey,* 59 N. H. 107 ; *Towle* v. *Lawrence,* 59 N. H. 501 ; *Marston* v. *Marston,* 17 N. H. 503, 508 ; *Gerrish* v. *Clough,* 36 N. H. 519, 524 ; *Colby* v. *Reed,* 99 U. S. 560, 566 ; *Watts* v. *Phipps,* Bull. N. P. 49 ; *Brunsdon* v. *Austin,* Tidd Pr. (3d ed.) 490 ; *Earle* v. *Holderness,* 4 Bing. 462 ; Rawle Cov. 280, 281 ; 2 Sutherland Dam. 271.  The defendant being responsible and trustworthy, or giving security, and undertaking to remove the prior incumbrance forthwith, execution or

judgment could be stayed, and his performance of his broken covenants could be allowed to operate as a measurable reduction of damages, or satisfaction of judgment, as in an action of trover for title deeds the damages may be reduced on the deeds being given up. *Loosemore* v. *Radford*, 9 M. & W. 657, 659; *Coombe* v. *Sansom*, 1 D. & R. 201; *Mowry* v. *Wood*, 12 Wis. 413. As a payment after the commencement of a suit may affect the amount of the verdict (*Dana* v. *Sessions*, 46 N. H. 509), so a defendant may be able to show that he ought to have leave, by a specific performance of his duty after verdict, to lessen the amount to be paid on execution. The theory that the common law has ceased to introduce convenient and reasonably necessary procedure (*Furnas* v. *Durgin*, 119 Mass. 500, 508) does not prevail in this state.

For the warrantee's eviction, which occurred after his title to the land against the defendant became absolute, the recoverable damages were not nominal. Between him and the defendant, his mortgage and its foreclosure cannot be considered as anything less than the defendant's sale of the land to him with warranty, at a price equal to the amount of the debt paid by the foreclosure. *Lloyd* v. *Quimby*, 5 Ohio St. 262, 265. The purchaser's recovery of that price and interest, as damages for the breaches of covenant, would have estopped him from claiming the land under his foreclosed mortgage. *Parker* v. *Brown*, 15 N. H. 176, 188; *Smith* v. *Smith*, 50 N. H. 212; *Baxter* v. *Bradbury*, 20 Me. 260, 263; *Blanchard* v. *Ellis*, 1 Gray 195, 202, 203; *Noonan* v. *Ilsley*, 21 Wis. 140, 146; Rawle Cov. 280, 281. Whether he could have recovered that amount (*Willson* v. *Willson*, 25 N. H. 229, *Drew* v. *Towle*, 30 N. H. 531, *Nutting* v. *Herbert*, 35 N. H. 120, 127, 37 N. H. 346, 2 Gr. Ev., *s.* 264), or the less sum with which the incumbrance, against which the land was warranted by the defendant, could be removed at the defendant's expense (*Willson* v. *Willson*, 25 N. H. 229, 236, *Tufts* v. *Adams*, 8 Pick. 547, 550, *White* v. *Whitney*, 3 Met. 81, 89, *Donahoe* v. *Emery*, 9 Met. 63, 68, 69, *Furnas* v. *Durgin*, 119 Mass. 500, 506, *Guthrie* v. *Russell*, 46 Iowa 269, Rawle Cov. 270, *n.*), or some other adequate indemnity, the measure of substantial damages recoverable in an action of covenant has no tendency to show that in a writ of entry between the same parties the covenantor could violate his warranty of the land, or plead or prove that it was not free from prior incumbrance. His discharge under the bankrupt act of 1841, relieving him from all personal liability for damages, would not have invested him with power to deny the truth of his covenants. The estoppel did not depend upon that liability. *Bush* v. *Person*, 18 How. 82, 85; *Chamberlain* v. *Meeder*, 16 N. H. 381; Rawle Cov. 401–403, 446.

The existence of the first mortgage was a breach of covenant of freedom from incumbrance. That covenant being broken when made, a right of action upon it accrued to Cephas when the junior mortgage was delivered to him; and the defendant's subsequent

payment of the prior mortgage could affect the damages only and not the right of action. *Smith* v. *Jefts,* 44 N. H. 482; *Dickey* v. *Weston* [*ante* 23]. Cameron's eviction of Cephas was a breach of the covenant of warranty. *White* v. *Whitney,* 3 Met. 81, 88; *Furnas* v. *Durgin,* 119 Mass. 500, 505; *Chandler* v. *Brown,* 59 N. H. 370, 372. The defendant's subsequent payment of his own debt to Cameron, whether it be called his extinguishment of Cameron's title, or his acquisition of that title, would be evidence in mitigation of the damages recoverable by Cephas, to whom any outstanding title, acquired by the defendant, would enure. Such reparation by specific performance of covenant after breach, if it reduced Cephas's damages to a nominal sum, did not affect his right of action for the breach. *Morrison* v. *Underwood,* 20 N. H. 369, 374; *Willson* v. *Willson,* 25 N. H. 229, 234; *Baxter* v. *Bradbury,* 20 Me. 260; *Cornell* v. *Jackson,* 3 Cush. 506, 510, 511; Rawle Cov. 266, 420, 421; 2 Sutherland Dam. 275. Whether his damages should be reduced by his acceptance of the land was a question not submitted by the law to the decision of the defendant. *Blanchard* v. *Ellis,* 1 Gray 195; *Burton* v. *Reeds,* 20 Ind. 87, 93; *Noonan* v. *Ilsley,* 21 Wis. 140, 147; *Nichol* v. *Alexander,* 28 Wis. 130; Rawle Cov. 266–277, 420–426, 446, 651. In this case there is no question of damages; and whatever evidence would be admissible on that question, the agreed facts do not alter the covenants, or disprove a breach of them (*Nutting* v. *Herbert,* 35 N. H. 120, 126; Rawle Cov. 258, 259, 260), or show how the defendant, having warranted the land to Cephas against an incumbrance, could legally or equitably take it from him on that incumbrance.

It is not necessary to inquire whether, on a bill in equity seasonably brought by the defendant, he could have obtained a decree for a sale of the land for the payment of both mortgages in money, or for a sale of the right of redeeming the land from the first for the payment of the second in money; or whether he could have obtained a decree in equity, or a modification of the judgment in Cephas's writ of entry, limiting the strict foreclosure of the second to a divided or undivided part of the land; or could have prevented its foreclosure on all the land without paying the debt in money. Whatever relief either party might have sought, and however their rights could have been affected by courses they could have taken, Cephas's remedy of estoppel against the defendant was not avoided or impaired by anything done by either of them, or the omission of either of them to do anything. If mortgage covenants of title and warranty are unimportant before and after foreclosure, when the covenantee has no opportunity to employ them as an estoppel, and no remedy for their breach more advantageous than an action on the debt, they are nevertheless important when, as in this case, everything is done that each party can do to render their estopping force available. Jones Mort., *ss.* 68, 679, 682.

The debt due to Cephas, by the terms of his note payable in

money, and if not paid in money, then by the terms of his security payable in land warranted and absolutely conveyed by foreclosed mortgage, was not paid in money.   No authority has been cited, and no legal principle has been suggested, having any tendency to show that the defendant's grant of the land to Cephas was, between them, a mere grant of a right to redeem the land from a prior conveyance ; that between them the defendant's warranty of the land was a mere quitclaim of such a fragment of title; that between them the deed was not foreclosed on the warranted land; that its foreclosure on the warranted land discharged the warranty, released the land, and applied to the payment of the note, without the payee's consent, so burdensome a property as a right to redeem the land from another grant; that the power of a foreclosed warranty grant of an entire title to convey two thirds of it if the warrantee will accept so much in payment, destroys the power of estoppel to convey the other third if the warrantor acquires it, and the warrantee, refusing a part, accepts the whole; that Cephas's judgment for a lot of land in his foreclosing suit against the defendant, his entry under a writ of possession for that lot, and his year's possession of it, were a foreclosure on the lot if it was of a certain value, but were a foreclosure on something else if the lot was of a certain other value ; that a second suit between the same parties, about nothing but the value of the lot, was necessary to clear the record of uncertainty, and determine whether the foreclosure was upon the soil or upon a right of redemption; that the defendant's covenants were legally disabled by the covenantee's knowledge of the fact that their falsity made them legally effective; or that the defendant's violation of his covenants forced upon the foreclosing covenantee an equity of redemption which he did not accept and had not agreed to accept, and paid him by reversing the contract, and putting him to the alternative of performing the covenants or losing the debt secured by them.   If the warrantee was compelled to abstain from foreclosure unless he would take upon himself the performance of the covenants, he was compelled to choose an uncompensated loss of the covenants which were a part of his security, or the mortgage which was the whole of it..

Cephas's mortgage, continuing between its grantor and grantee to be a warranty deed of the land, paid the note by becoming unconditional in legal character and effect.   Whether it were afterwards called a foreclosed mortgage or an absolute deed, the defendant, by making it, and allowing it to remain in force against him as a warranty conveyance of all the land of whatever value, and to become indefeasible, sold all the land with warranty for the amount of the judgment in the foreclosure suit.   The lawful and unresisted foreclosing enforcement of contract, unaccompanied by any obligation of Cephas to pay any debt, perform any duty, or surrender any covenant of the defendant, was not inequitable in any legal sense.   It was not completed until, for exercising the right of

averting it, and for deliberation, the defendant had all the oppor-
tunity he reserved, and all that was considered reasonable by the
legislature.　In 1862 he took care that Cameron should not have
the land in payment of one mortgage: but in 1860 he preferred,
for some reason, to sell it to Cephas in payment of the other, rather
than sell it for enough to pay both.　For the purpose of arguing a
demurrer to the statement of his defence, the parties agree the
land was of a value that does not explain his course.　If the value
was a dollar less than, for the purpose of argument, the provisional
case supposes, he does not claim he could take the land from
Cephas.

His foreclosed and absolute warranty conveyance of the land
for less than its value in payment of his debt to Cephas, raised no
legal or moral ground on which he could retake the land and avoid
the debt.　His purpose in making the sale, being immaterial, is
not disclosed in the agreed case.　If that undisclosed purpose was
not accomplished, he might have desired to rescind the sale, and
make a different contract conveying either something less than the
whole land in payment of the debt, or the whole for a greater
price.　But the project of retaking the whole land and avoiding
the whole debt was not less unsound in equity than in law: its
disregard of the legal obligation of his covenants was not its only
defect　Cephas being without fault, justice did not require that
the defendant should gain $5,000 by selling him the land for $2,500
less than its value, and taking it back for nothing.　From that
method of acquisition the vendor equitably restrained himself by
the covenants with which he protected the vendee.　"In case the
mortgagee forecloses and retains title to the land on which he has
foreclosed, the land is applied in payment of the debt."　*Green* v.
*Cross*, 45 N. H. 574, 576.　Against the defendant, Cephas could
retain the title which the defendant undertook to convey and de-
fend.

*Case discharged.*

Smith and Carpenter, JJ., did not sit: the others concurred.